BRENDA SUE BRADLEY

*v.*

.APPALACHIAN POWER COMPANY

(No. 14310)

BRADY NAPIER

*v.*

ELK GROCERY COMPANY

(No. 14345)

Decided July 10, 1979.

*E. Joseph Buffa, Jr., DiTrapano, Jackson & Buffa,* for appellant in No. 14310.

*W. T. Shaffer, A. L. Emch, Jackson, Kelly, Holt & O'Farrell,* for appellee in No. 14310.

*Menis E. Ketchum, Greene, Ketchum & Mills,* for appellant in No. 14345.

*Michael J. Farrell, Jenkins, Fenstermaker, Krieger, Kayes & Farrell,* for appellee in No. 14345.

MILLER, JUSTICE:

In these two cases, which have been consolidated on appeal, we are asked to re-examine and ameliorate the common law doctrine of contributory negligence.

In each case the plaintiff sought by way of an instruction to utilize the doctrine of comparative negligence to avoid the defense of contributory negligence. The ten-

dered instruction was rejected and the usual contributory negligence instruction was given, with the jury returning a verdict for the defendant in each case.

## I

The doctrine of contributory negligence is generally thought to have originated in the English common law in *Butterfield v. Forrester*, 11 East 60, 103 Eng. Rep. 926 (K.B. 1809), where the plaintiff, a horseman, was barred from recovery for his injuries when his horse ran into a pole. The pole had been left projecting onto the public road by the defendant, an adjoining landowner who was repairing his house.[1]

There can be no doubt that the doctrine of contributory negligence was judicially created. W. Prosser, *The Law of Torts* (4th ed. 1971), p. 416, *et seq.;* Annot., 78 A.L.R.3d 339 (1977). The first occasion this Court had to discuss the doctrine of contributory negligence was in *Snyder v. Pittsburgh, Cincinnati & St. Louis Ry. Co.*, 11 W. Va. 14 (1877). There, the Court did not apply the doctrine because it found it insufficiently supported by the facts.

In *Morningstar v. Black and Decker Mfg. Co.*, ____ W. Va. ____, 253 S.E.2d 666 (1979), we analyzed certain constitutional and statutory language, and stated in Syllabus Point 2 this Court's role in the development of common law principles:

---

[1]At least one commentator has questioned whether *Butterfield v. Forrester*, 11 East 60, 103 Eng. Rep. 926 (K.B. 1809), was the first common law contributory negligence case. W. S. Malone in "The Formative Era of Contributory Negligence," 41 Ill. L. Rev. 151 (1946), states:

"The concise opinions of Bayley and Lord Ellenborough in *Butterfield v. Forrester* (1809) afford no indication that either of those judges felt at the time that he was charting new paths for the law."

Justice Roberts, dissenting in *Hoffman v. Jones*, 280 So.2d 431, 442 (Fla. 1973), makes this assertion:

"Contributory negligence was adopted much earlier as a part of the common law. ... Bayly v. Merrel, Cro.Jac. 386, 79 Eng. Rep. 331 (1606). ..."

"Article VIII, Section 13 of the West Virginia Constitution and W. Va. Code, 2-1-1, were not intended to operate as a bar to this Court's evolution of common law principles, including its historic power to alter or amend the common law."

There is an almost universal dissatisfaction among leading scholars of tort law with the harshness of the doctrine of contributory negligence.[2] Neither intensive scholarship nor complex legal arguments need be advanced to demonstrate its strictness. A plaintiff can, if the jury is faithful to the contributory negligence instruction it receives, be barred from recovery if his negligence "contributed in the slightest degree" to the accident. Syllabus Point 7, *Crum v. Ward*, 146 W. Va. 421, 122 S.E.2d 18 (1961); Syllabus Point 3, *Morton v. Baber*, 118 W. Va. 457, 190 S.E. 767 (1937). Thus, our system of jurisprudence, while based on concepts of justice and fair play, contains an anomaly in which the slightest negligence of a plaintiff precludes any recovery and thereby excuses the defendant from the consequences of all of his negligence, however great it may be.

There have been several judicial modifications of the severity of contributory negligence. Under the doctrine of last clear chance, the plaintiff's contributory negligence is excused if it can be shown that the defendant had the last opportunity to avoid the accident. *Davies v.*

---

[2] Aiken, *Proportioning Comparative Negligence—Problems of Theory and Special Verdict Formulation*, 53 Marq. L. Rev. 293 (1970); George & Walkowiak, *Blame and Reparation in Pure Comparative Negligence: The Multi-Party Action*, 8 Sw. U. L. Rev. 1 (1976); Haugh, *Comparative Negligence: A Reform Long Overdue*, 49 Or. L. Rev. 38 (1969); James, *Contributory Negligence*, 62 Yale L.J. 691 (1953); Leflar, *The Declining Defense of Contributory Negligence*, 1 Ark. L. Rev. 1 (1947); Levy, *Pure Comparative Negligence: Set-Offs, Multiple Defendants and Loss Distribution*, 11 U.S.F. L. Rev. 405 (1977); Maloney, *From Contributory to Comparative Negligence: A Needed Law Reform*, 11 U. Fla. L. Rev. 135 (1958); Prosser, *Comparative Negligence*, 41 Cal. L. Rev. 1 (1953); Twerski, *The Use and Abuse of Comparative Negligence in Products Liability*, 10 Ind. L. Rev. 797 (1977).

*Mann,* 10 M.&W. 546, 152 Eng. Rep. 588 (1842); *Barr v. Curry,* 137 W. Va. 364, 71 S.E.2d 313 (1952).[3]

The defense of contributory negligence is also not available where the defendant is found to be guilty of wanton and wilful misconduct. *Stone v. Rudolph,* 127 W. Va. 335, 32 S.E.2d 742 (1944); 57 Am. Jur. 2d *Negligence* § 305 (1971). This result is justified on what is roughly a comparative negligence theory, whereby the intentional tort of the defendant makes trivial the simple negligence of the plaintiff. Perhaps this same explanation may also be the basis for barring contributory negligence where the defendant is subject to strict liability under the doctrine of *Rylands v. Fletcher,* L.R. 3 H.L. 330 (1868), *aff'g* L.R. 1 Ex. 265 (1866); 57 Am. Jur. 2d *Negligence* § 310 (1971).

In some instances the doctrine of contributory negligence is not available where the defendant violates a statute clearly designed for the protection of the plaintiff. *Pitzer v. M. D. Tomkies & Sons,* 136 W. Va. 268, 67 S.E.2d 437 (1951); 57 Am. Jur. 2d *Negligence* § 310 (1971).

Legislatures in a number of states have enacted comparative negligence statutes of one variety or another.[4] The basic framework of these statutes is to permit a negligent plaintiff to recover so long as his negligence does not exceed some established percentage, usually 50 percent.[5] Such statutes require that his recovery be reduced by the percentage of contributory negligence found to exist.

---

[3]No attempt has been made to formulate all phases of the last clear chance doctrine. *See,* Donley, *Observations on Last Clear Chance in West Virginia,* 37 W. Va. L.Q. 362 (1931); Donely, *Last Clear Chance—Some Further Observations,* 49 W. Va. L.Q. 51 (1942); Prosser, *The Law of Torts* 427 (4th ed. 1971); 57 Am. Jur. 2d *Negligence* § 386 (1971).

[4]Ark. Stat. Ann. §§ 27-1763 to 1765 (Supp. 1977); Colo. Rev. Stat. § 13-21-111 (1973); Conn. Gen. Stat. Ann. § 52-572h (West Supp. 1979); Haw. Rev. Stat. § 663-31 (1976); Idaho Code §6-801 (1979); Kan. Stat. §60-258a (1976); Me. Rev. Stat. tit. 14, §156 (Supp. 1978); Mass. Gen.

Four states—Alaska,[6] California,[7] Florida,[8] and Michigan[9]—have by judicial decision abolished the doctrine of contributory negligence and substituted in its place a "pure" comparative negligence concept. Under this principle, a plaintiff may recover regardless of the degree of his contributory negligence, but the jury is required to reduce his award in proportion to his contributory negligence.

Most commentators[10] and the four courts which have adopted the pure comparative negligence position are critical of the 50 percent approach, primarily on the basis that it involves the drawing of an arbitrary line beyond which contributory negligence can still be asserted as a bar to the plaintiff's action. The basis of this criticism is expressed in *Li v. Yellow Cab Co.*, 13 Cal. 3d

---

Laws Ann. ch. 231, §85 (West Supp. 1979); Minn. Stat. Ann. §604.01 (West Supp. 1979); Miss. Code Ann. § 11-7-15 (1972); Mont. Rev. Codes Ann. § 58.607.1 (Supp. 1975); Neb. Rev. Stat. ch. 25-1151 (1975 reissue); Nev. Rev. Stat. ch. 41.141 (1977); N.H. Rev. Stat. Ann. § 507:7a (Supp. 1977); N.J. Stat. Ann. § 2A: 15-5.1 (West Sup. 1979); N.Y. Civ. Prac. Law § 1411 (McKinney 1976); N.D. Cent. Code § 9-10-07 (1975); Okla. Stat. Ann. tit. 23, § 11 (West Supp. 1978); Or. Rev. Stat. § 18.470 (1977); Pa. Stat. Ann. tit. 17, § 2101 (Purdon Supp. 1978); R.I. Gen. Laws §9-20-4 (Supp. 1978); S.D. Compiled Laws Ann. § 20-9-2 (1969); Tex. Rev. Civ. Stat. Ann. art. 2212a, § 1 (Vernon Supp. 1978); Utah Code Ann. § 78-27-37 (1977); Vt. Stat. Ann. tit. 12, § 1036 (1973); Wash. Rev. Code Ann. § 4.22.010 (Supp. 1978); Wis. Stat. Ann. § 895.045 (West Supp. 1978); Wyo. Stat. § 1-1-109 (1977).

[5]Four states—Mississippi, New York, Rhode Island and Washington—have by statute adopted "pure" comparative negligence, whereby the plaintiff can recover so long as he is not 100 percent negligent.

[6]*Kaatz v. State*, 540 P.2d 1037 (Alas. 1975).

[7]*Li v. Yellow Cab Co.*, 13 Cal. 3d 804, 119 Cal. Rptr. 858, 532 P.2d 1226 (1975).

[8]*Hoffman v. Jones*, 280 So.2d 431 (Fla. 1973).

[9]*Kirby v. Larson*, 400 Mich. 585, 256 N.W.2d 400 (1977).

[10]*See* note 2, *supra*, at 2.

804, 827-28, 119 Cal. Rptr. 858, 874-75, 532 P.2d 1226, 1242-43 (1975):

> "We have concluded that the 'pure' form of comparative negligence is that which should be adopted in this state. In our view the '50 percent' system simply shifts the lottery aspect of the contributory negligence rule to a different ground. As Dean Prosser has noted, under such a system '[i]t is obvious that a slight difference in the proportionate fault may permit a recovery; and there has been much justified criticism of a rule under which a plaintiff who is charged with 49 percent of a total negligence recovers 51 percent of his damages, while one who is charged with 50 percent recovers nothing at all.' " [Footnotes omitted]

The difficulty with the pure comparative negligence rule, however, is that it focuses solely on the hypothetical "plaintiff" without recognizing that once pure comparative negligence is embraced, all parties whose negligence or fault combined to contribute to the accident are automatically potential plaintiffs unless a particular party is found to be 100 percent at fault.

The fundamental justification for the pure comparative negligence rule is its fairness in permitting everyone to recover to the extent he is not at fault. Thus, the eye of the needle is "no fault," and we are asked not to think about the larger aspect—the camel representing "fault." It is difficult, on theoretical grounds alone, to rationalize a system which permits a party who is 95 percent at fault to have his day in court as a plaintiff because he is 5 percent fault-free.

The practical result of such a system is that it favors the party who has incurred the most damages regardless of his amount of fault or negligence. To illustrate, a plaintiff who has sustained a moderate injury with a potential jury verdict of $20,000, and who is 90 percent fault-free, may be reluctant to file suit against a defendant who is 90 percent at fault, but who has received severe injuries and whose case carries a potential of

$800,000 in damages from a jury verdict. In this situation, even though the defendant's verdict is reduced by his 90 percent fault to $80,000, it is still far in excess of the plaintiff's potential recovery of $18,000.[11]

While it can be conceded that there is an obvious injustice in the current contributory negligence rule which bars recovery no matter how slight the plaintiff's negligence, nevertheless the pure comparative negligence rule seems equally extreme at the other end of the spectrum. None of the courts which have adopted the pure comparative negligence rule have discussed the problems addressed above, and are content to rest their holdings on the following syllogism: (1) the contributory negligence rule is draconian in its operation; (2) the legislative solution of apportioning the plaintiff's fault up to 50 percent is an arbitrary line-drawing lottery;[12] (3)

---

[11]The courts which have adopted the pure comparative negligence rule have not discussed this type of result. They also appear to proceed on the unstated assumption that all accidents will be covered by sufficient insurance to pay all the verdicts stemming from a multi-party accident. This premise is never documented. If we consider the text illustration and assume the plaintiff has a modest insurance limit of $50,000 for any one injury, the potential exposure to an $80,000 net verdict in favor of the 90-percent-at-fault, but seriously damaged defendant, creates a substantial pratical bar to a suit. It is doubtful that a competent attorney would advise the plaintiff to sue, since the plaintiff's claim has a maximum jury potential of $20,000, which nets $18,000 when reduced by his 10 percent fault or contributory negligence. This leaves the plaintiff with a potential $12,000 uninsured exposure even after he recovers his $18,000 and pays it to the defendant along with his $50,000 worth of insurance to satisfy the defendant's $80,000 net verdict.

[12]The argument that the difference between recovery at 49 percent contributory negligence and no recovery at 50 percent or above is an arbitrary line, is probably more theoretical than real. It is doubtful that any jury will be able to slice contributory negligence so thinly, a point which Prosser notes in his article *Comparative Negligence* in 41 Cal. L. Rev. at 25. In all probability, when the contributory negligence rises near the 50 percent level the jury will conclude that plaintiff is guilty of such substantial contributory negligence that it will fix his percentage at 50 or higher to bar his recovery.

therefore, the pure comparative negligence rule is fairer.

The Michigan court in *Kirby v. Larson*, 400 Mich. 585, 637-41, 256 N.W.2d 400, 425-27 (1977), besides relying heavily on *Li v. Yellow Cab Co.*, *supra*, quotes at length from *United States v. Reliable Transfer Co.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), where the United States Supreme Court abandoned its divided damages rule in admiralty in favor of apportioned damages based on the respective fault of the involved vessels. It may be seriously questioned whether an admiralty rule involving damage to vessels has much relevance to the common law doctrine of contributory negligence.[13]

The history of the common law is one of gradual judicial development and adjustment of the case law to fit the changing conditions of society.[14] We see no practical

---

[13]As noted in 2 Am. Jur. 2d *Admiralty* § 1 (1962), the development of admiralty in England was independent of the common law courts and against their opposition. *See also Benedict on Admiralty* (7th ed. 1974), § 41, *et seq.* at 3-1, *et seq.* Apart from the federal statutory rights noted below, the traditional maritime remedy for injured seamen was a suit for maintenance and cure—basically medical and per diem support—which arises out of neither contract nor tort, but rather as an incident of their status. The only other remedy was under the doctrine of unseaworthiness, a doctrine akin to a breach of warranty action founded on the duty to have a seaworthy vessel, in which negligence was not a factor. Note, *The Tangled Seine: A Survey of Maritime Personal Injury Remedies*, 57 Yale L.J. 243, 247-56 (1947).

*Kirby* also quotes note 13 of *United States v. Reliable Transfer Co., Inc.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L. Ed. 2d 251 (1975), where the Supreme Court mentions the statutory comparative negligence rule in the Jones Act, 46 U.S.C. § 688, and in the Death on the High Seas Act, 46 U.S.C. § 766. However, since these statutes give relief only to the injured seaman and are not designed to permit the employer-defendant to countersue, they have no real analogy to the pure comparative negligence rule, whereby the defendant may also be a plaintiff. The same is true under the Federal Employers Liability Act, 45 U.S.C. § 51, *et seq.*

[14]As we demonstrated in *Morningstar v. Black and Decker Manufacturing Co.*, *supra*, by extended citations from other courts and leading legal scholars, the genius of the court-created common law

benefit to be gained by the radical break from the common law's tort-fault methodology that the pure comparative negligence rule requires. There are basic inequities inherent in the pure comparative negligence rule and its resulting singular emphasis on the amount of damages and insurance coverage as the ultimate touchstone of the viability of instituting a suit.[15]

We do not accept the major premise of pure comparative negligence that a party should recover his damages regardless of his fault, so long as his fault is not 100 percent. Without embarking on an extended philosophical discussion of the nature and purpose of our legal system, we do state that in the field of tort law we are not willing to abandon the concept that where a party substantially contributes to his own damages, he should not be permitted to recover for any part of them. We do recognize that the present rule that prohibits recovery to the plaintiff if he is at fault in the slightest degree is manifestly unfair, and in effect rewards the substantial-

---

is its evolutionary ability "to grow with and adapt to changing conditions of society." We quoted the following passage from Dean Pound in *The Spirit of the Common Law* (1921) at 182:

" 'The chief cause of the success of our common-law doctrine of precedents as a form of law is that it combines certainty and power of growth as no other doctrine has been able to do. Certainty is insured within reasonable limits in that the court proceeds by analogy of rules and doctrines in the traditional system and develops a principle for the cause before it according to a known technique. Growth is insured in that the limits of the principle are not fixed authoritatively once for all but are discovered gradually by a process of inclusion and exclusion as cases arise which bring out its practical workings and prove how far it may be made to do justice in its actual operation.' " [253 S.E.2d at 675]

[15]We acknowledge that in any legal system permitting recovery of damages, the amount actually recovered ultimately depends on the financial solvency of the defendant. To create, however, as does the pure comparative negligence rule, a system where plaintiff's decision to sue may depend not on the degree to which he is free from fault but on his financial ability to withstand the countersuit, is to emphasize unduly the damage aspect and to obscure the relative fault of the parties.

ly negligent defendant by permitting him to escape any responsibility for his negligence.

Our present judicial rule of contributory negligence is therefore modified to provide that a party is not barred from recovering damages in a tort action so long as his negligence or fault does not equal or exceed the combined negligence or fault of the other parties involved in the accident. To the extent that our prior contributory negligence cases are inconsistent with this rule, they are overruled.[16]

## II

Some explanation is warranted as to how this new rule operates. We do not intend to consider exhaustively all the particular ramifications of the new rule, since they are best resolved within the particular factual framework of the individual case.

We do state what may be the obvious, that the sum of the negligence of all the parties to a given accident cannot exceed 100 percent. Furthermore, it will be the jury's obligation to assign the proportion or degree of this total negligence among the various parties, beginning with the plaintiff.

The requirements of proximate cause have not been altered by the new rule. Consequently, before any party is entitled to recover, it must be shown that the negligence of the defendant was the proximate cause of the accident and subsequent injuries. The same is true of

---

[16]*E.g., Kidd v. Norfolk & Western Railway*, 156 W. Va. 296, 192 S.E.2d 890 (1972); *Graham v. Wriston*, 146 W. Va. 484, 120 S.E.2d 713 (1961); *Leftwich v. Wesco Corp.*, 146 W. Va. 196, 119 S.E.2d 401 (1961); *Wolfe v. Beatty Motor Express, Inc.*, 143 W. Va. 238, 101 S.E.2d 81 (1957); *McMicken v. Province*, 141 W. Va. 273, 90 S.E.2d 348 (1955); *Belcher v. Norfolk & Western Railway*, 140 W. Va. 848, 87 S.E.2d 616 (1955); *Reese v. Lowry*, 140 W. Va. 772, 86 S.E.2d 381 (1955); *Pritchard v. City Lines of West Virginia, Inc.*, 136 W. Va. 278, 66 S.E.2d 276 (1951); *Smith, Administrator v. Gould*, 110 W. Va. 579, 159 S.E. 53 (1931); *Washington v. Baltimore & Ohio Railroad*, 17 W. Va. 190 (1880).

contributory fault or negligence. Before it can be counted against a plaintiff, it must be found to be the proximate cause of his injuries.

The jury should be required by general verdict to state the total or gross amount of damages of each party whom they find entitled to a recovery, and by special interrogatory the percentage of fault or contributory negligence, if any, attributable to each party. After the verdicts have been accepted, the trial court will calculate the net amount by deducting the party's percentage of fault from his gross award. To this extent, we follow the mechanics of the jury verdict award employed by the courts which have adopted pure comparative negligence, which is compatible with most of the statutory approaches.[17] V. Schwartz, *Comparative Negligence* (1974), § 17.4, at 282, *et seq.*

Our comparative negligence rule has no effect on the plaintiff's right to sue only one of several joint tortfeasors. However, as we pointed out in *Haynes v. City of Nitro*, ____ W. Va. ____, 240 S.E.2d 544 (1977), the joint tortfeasor so sued may implead the other joint tortfea-

---

[17]Both W. Va. *Code*, 56-6-5, and Rule 49 of the Rules of Civil Procedure permit the use of written interrogatories to accompany the general verdict. Obviously, by having the jury find the gross amount and the percentage of contributory negligence, the court has some ability to monitor the jury's conclusions. We anticipate that there may be occasions where the interrogatory answers returned by the jury are confusing or inconsistent. Rule 49(b) specifically provides:

"When the answers are consistent with each other but one or more is inconsistent with the general verdict, the [trial] court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict or may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but may return the jury for further consideration of its answers and verdict or may order a new trial."

*See generally* 5a J. Moore, *Federal Practice* (2nd ed. 1977), § 49.04, at 2221.

sors as third-party defendants. *Haynes* established that there is an inchoate right of contribution between joint tortfeasors in advance of judgment except where the act is *malum in se*. Thus, while the original defendant may have to respond only to the plaintiff for the latter's damages, the defendant in the third-party action can have these damages apportioned among the third-party defendants.

*Haynes* enables a joint tortfeasor to institute a third-party action before judgment in order to bring in the other joint tortfeasors to have them share in any liability that he may be found to have with regard to the plaintiff. 18 Am. Jur. 2d *Contribution* § 35, *et seq.;* 18 C.J.S. *Contribution* § 11.[18] *Haynes* is designed to moderate the inequity which existed in our law that enabled the plaintiff to cast the entire responsibility for an accident on one of several joint tortfeasors by deciding to sue only him.

Neither our comparative negligence rule nor *Haynes* is designed to alter our basic law which provides for joint and several liability among joint tortfeasors after judgment. *Hardin v. New York Central Railroad,* 145 W. Va. 676, 116 S.E.2d 697 (1960); *Muldoon v. Kepner,* 141 W. Va. 577, 91 S.E.2d 727 (1956). Most courts which have considered the question after either a statutory or judicial adoption of some form of comparative negligence have held that the plaintiff can sue one or more joint tortfeasors, and if more than one is sued and a joint judgment is obtained, he may collect the entire amount from any one of the defendants. *See, e.g., American Motorcycle Association v. Superior Court,* 20 Cal.3d 578, 588-90, 146 Cal. Rptr. 182, 188-90, 578 P.2d 899, 905-906 (1978); *Gazaway v. Nicholson,* 190 Ga. 345, 348, 9 S.E.2d 154, 156

---

[18]Rule 14(a) of our Rules of Civil Procedure permits the defendant to bring in as a third-party defendant one "who is or may be liable to him for all or part of the plaintiff's claim. . . ." *See* 3 J. Moore, *Federal Practice* (2nd ed. 1978), § 14.11, at 14-322, *et seq.,* and 6 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* (1971), § 1448, at 263, *et seq.*

(1940); *Kelly v. Long Island Lighting Co.,* 31 N.Y.2d 25, 30, 334 N.Y.S.2d 851, 855, 286 N.E.2d 241, 243 (1972); *Seattle First National Bank v. Shoreline Concrete,* 91 Wash.2d 230, 588 P.2d 1308, 1313-1314 (1978); *Chille v. Howell,* 34 Wis. 2d 491, 498-500, 149 N.W.2d 600, 604-605 (1967); V. Schwartz, *Comparative Negligence* (1974), § 16.4, at 253. Under W. Va. Code, 55-7-13, joint tortfeasors may still obtain contribution after judgment.

Our comparative negligence rule does not change the right of a joint tortfeasor to obtain a *pro tanto* credit on the plaintiff's judgment for monies obtained by the plaintiff in a settlement with another joint tortfeasor. *Tennant v. Craig,* 156 W. Va. 632, 195 S.E.2d 727 (1973); *Hardin v. New York Central Railroad,* 145 W. Va. 676, 116 S.E.2d 697 (1960).

Since we have not completely abolished the doctrine of contributory negligence, we recognize that in appropriate circumstances the doctrine of last clear chance is still available. In the case of an intentional tort, contributory negligence is not a defense. *Stone v. Rudolph,* 127 W. Va. 335, 32 S.E.2d 742 (1944). Therefore, comparative negligence would not come into play, and the plaintiff would recover his damages undiminished by any contributory negligence.

By way of summary, we believe that moderating the harshness of our contributory negligence rule achieves a more satisfactory balance in the allocation of fault as it relates to recovery in our tort system. Our comparative negligence rule still bars the substantially negligent plaintiff[19] from obtaining a recovery, but it does permit the plaintiff who is more than slightly at fault to recover his injuries diminished by his percentage of contributory negligence. The rule is an intermediate position between

---

[19]From a purely mechanical standpoint, our new rule of comparative negligence means that where plaintiff's contributory negligence is equal to or above 50 percent of the combined negligence of the parties to the accident, he is barred from recovery. This obviously is the meaning of the phrase, "substantially negligent plaintiff."

the absolute bar of the present contributory negligence rule and the almost total permissiveness of the pure comparative negligence rule. It represents a considerable improvement over the present rule without undertaking a radical change in our present fault-based tort system, as would be the case with pure comparative negligence.

## III

Finally, we address the question of the applicability of the rule here announced to cases now pending. In *Adkins v. Leverette*, _____ W. Va. _____, 239 S.E.2d 496 (1977), we discussed in some detail the doctrine of retroactivity as applied to a constitutional issue in a criminal case. There, we recognized that: "We do not attempt to state a single answer to questions that may arise on the issue of retroactivity." [_____ W. Va. at _____, 239 S.E.2d at 499]

*Adkins* cited *Falconer v. Simmons*, 51 W. Va. 172, 41 S.E. 193 (1902), which followed the traditional common law view:

"An overruled decision is regarded not law, as never having been the law, but the law as given in the later case is regarded as having been the law, even at the date of the erroneous decision." [Syllabus Point 2 in part]

However, even *Falconer* recognized an exception to this rule: Where a prior case has construed a statute and a valid contract has been entered into on reliance upon this construction of the statute, "the later decision does not retroact so as to invalidate such contract." [Syllabus Point 2 in part]

In an unanimous opinion by Justice Cardozo in *Great Northern Railway v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364, 77 L. Ed. 360, 366, 53 S.Ct. 145, 148 (1932), the United States Supreme Court concluded from a federal constitutional standpoint:

"We think the federal constitution has no voice upon the subject. A state in defining the limits of

adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions."

We do not find any provision in the *West Virginia Constitution* which addresses this point.

After *Sunburst*, the Court indicated in *Linkletter v. Walker*, 381 U.S. 618, 14 L. Ed. 2d 601, 85 S.Ct. 1731 (1965), that the general principles of retroactive or prospective application of an overruling decision are essentially the same. In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-107, 30 L. Ed. 2d 296, 306, 92 S.Ct. 349, 355 (1971), the Court formulated the following test:

"In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see, e.g., Hanover Shoe v United Shoe Machinery Corp., supra, [392 U.S.] at 496, 20 L Ed 2d at 1243, or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, e.g., Allen v State Board of Elections, supra, [393 U.S.] at 572, 22 L Ed 2d at 20. Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' Linkletter v. Walker, supra, [381 U.S.] at 629, 14 L Ed 2d at 608. Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' Cipriano v City of Houma, supra, [395 U.S.] at 706, 23 L Ed 2d at 652."

Moreover, despite *Linkletter's* assertion that the same principles apply to both civil and criminal cases when decisions are overruled, the Supreme Court has at least shifted its emphasis, and in some cases created outright exceptions. *See, e.g., Williams v. United States*, 401 U.S. 646, 653, 28 L. Ed. 2d 388, 395, 91 S.Ct. 1148, 1152 (1971) (de-emphasizing good faith reliance as a basis for nonretroactivity "[w]here the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function.").

In short, as commentators have noted, while general guidelines can be evolved to determine whether retroactive or prospective application should be given to an overruling decision, it is difficult to etch them with precision so that they will fit all cases.[20]

From a practical standpoint, it is perhaps unnecessary to refine the rules relating to retroactive application in great detail. It is an area of the law not frequently encountered, since the outright reversal of a prior case is a rather uncommon occurrence. While the need for accurate guidelines is important in the substantive areas of the law to provide trial courts and the practitioner with the essential element of predictability, it is of diminished importance with regard to the procedural question of whether an overruling case should be made fully retroactive.

We observe initially that retroactivity considerations in a criminal case presenting constitutional issues involve different policy judgments which may not be present in the ordinary civil case. Certainly an important difference is that full retroactivity in a constitutional criminal case provides an opportunity for collateral at-

---

[20]Beytagh, *Ten Years of Non-Retroactivity: A Critique and a Proposal*, 61 Va. L. Rev. 1557 (1975); Currier, *Time and Change in Judge-Made Law: Prospective Overruling*, 51 Va. L. Rev. 201 (1965); Traynor, *Quo Vadis, Prospective Overruling: A Question of Judicial Responsibility*, 28 Hastings L.J. 533 (1977); *see generally* Annot., 10 A.L.R.3d 1371 (1966).

tack by habeas corpus upon all criminal judgments, not merely those judgments for which direct appeal is still available. Furthermore, in the criminal area where federal constitutional rights are involved, as we observed in *Adkins*, it is likely that "the Supreme Court's retroactivity rule is binding on the states." [239 S.E.2d at 499]

In the present case, we are confronted with fashioning a retroactivity rule in regard to a civil case. There are various factors which should be taken into consideration in resolving the question of retroactivity. In any attempt to list factors, it should be stressed that not all factors always carry the same weight, for the weight of any given factor may vary with the facts of a given case.

Retroactivity of an overruling decision is designed to provide equality of application to the overruling decision because its new rule has been consciously designed to correct a flawed area of the law. The more egregious the error, the greater the need to extend the benefits of the overruling decision to others occupying the same status. To some extent, although the policy considerations are different, this initial consideration follows *Falconer's* result.[21]

Counterbalancing this factor are several considerations. First, the nature of the substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public issues are involved, aris-

---

[21]We believe the test set out in *Falconer v. Simmons*, 51 W. Va. 172, 41 S.E. 193 (1902), as to retroactivity, is too narrow.

ing from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limiting retroactivity. Finally, we will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions.

In the present case, we have altered our judicially created rule that the slightest degree of contributory negligence bars recovery. We have not, however, completely abolished the defense of contributory negligence. The issue falls within the field of tort law, which historically has not been a settled area of the law such as property or contracts, but has been subject to continual change by the courts and legislatures to meet the evolving needs of an increasingly mobile, industrialized and technological society.[22] The issue at hand primarily affects private parties and arises on a case-to-case basis with the cause of action controlled by the limited time period for actions for personal injuries, so that the beneficiaries of the new decision's retroactivity are a limited class.

In the four states which have adopted pure comparative negligence, a rule which we consider to be a much more radical departure than our new rule, two states have accorded what amounts to full retroactivity to their decision. *Kaatz v. State,* 540 P.2d 1037, 1050 (Alas. 1975); *Hoffman v. Jones,* 280 So.2d 431, 439-40 (Fla. 1973). In *Kirby v. Larson,* 400 Mich. 585, 645, 256 N.W.2d 400, 429 (1977), the Michigan court limited the applicability of its pure comparative negligence rule "to the present case and to those cases filed after the date of this decision." However, in *Placek v. City of Sterling Heights,* 275 N.W.2d 511, 521-22 (Mich. 1979), the court acknowledged

---

[22]*See* Green, *The Thrust of Tort Law,* 64 W. Va. L. Rev. 1, 115 and 241 (1961–62), and the many articles and cases cited therein.

that the retroactivity rule of *Kirby* was too restrictive, and decided to extend complete retroactivity to its pure comparative negligence rule.[23]

California, in *Li v. Yellow Cab Co.*, 13 Cal.3d 804, 119 Cal. Rptr. 858, 532 P.2d 1226 (1975), accorded retroactivity of its pure comparative negligence rule to cases which had not reached the trial stage prior to the date of the *Li* opinion, but denied it as to other cases on appeal.

We thus find that the cases have generally extended retroactivity to the pure comparative negligence rule. *See generally* Annot., 78 A.L.R.3d 421 (1977). Under the foregoing analysis of retroactivity, we hold that the new rule of comparative negligence is fully retroactive.

For the foregoing reasons, the judgment in each case is reversed and the cases are remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

---

[23]The pertinent language in *Placek* is:

"Therefore, we hold the rule announced today applicable to the instant case and all appropriate cases in which trial commences after the date of this opinion including those in which a retrial is to occur because of remand on any other issue. Further, we find comparative negligence applicable to any case presently pending on appeal in which application of the doctrine was requested at the trial court and the issue preserved for appeal. Finally, comparative negligence shall be the applicable rule in any case commenced but not submitted to the trier of fact prior to the date of this decision, but in no case shall it apply unless there is an appropriate request by counsel prior to submission to the trier of fact." [275 N.W.2d at 522]