# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Jobie Howard,
**Plaintiff Below, Petitioner**

**vs) No. 16-0055**  (Mingo County 12-C-37)

Eaton Corporation,
**Defendant Below, Respondent**

**FILED**

**November 10, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner and plaintiff below Jobie Howard, by counsel Roger A. Decanio, appeals the December 22, 2015, order of the Circuit Court of Mingo County that granted the motion for summary judgment filed by Eaton Corporation ("Eaton").[1] Eaton, by counsel Jonathan T. Barton, Ancil G. Ramey, and James J.A. Mulhall, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 12, 2010, petitioner, while working for Arch Coal ("Arch") as a qualified mine electrical worker, removed several protective barriers to gain access to the internal components of an energized 480-volt Motor Control Center ("MCC") unit manufactured by Eaton. After removing the barriers, petitioner routed a de-energized ground wire from the top compartment of the energized MCC through a wireway to a lower compartment where a neutral bar was located. To affix the grounding wire to the neutral bar, petitioner placed two uninsulated metal wrenches inside the energized MCC. While attempting to tighten a bolt using both wrenches, one of the wrenches made contact with an energized component within the MCC, creating an arc fault. As a result, petitioner and a co-worker suffered serious electrical burns to their bodies.

An MCC is a product customized to fit within a larger electrical distribution system in order to meet the electrical needs of the customer—in this case, Arch. Arch hired Robertson P & E, Inc. ("Robertson"), an electrical contractor, to design the electrical distribution system as part of an expansion project in May of 2005. As part of the project, Robertson ordered nine MCCs from WESCO International, Inc. ("Wesco"), a distributor of electrical products, for use at

---

[1] Although Arch Coal, Inc. and Coal-Mac, Inc. d/b/a Phoenix Coal-Mac Mining, Inc. were also named as defendants below, they are not parties to the instant appeal; their status as defendants in this case is unclear from the appendix record.

1

various locations throughout Arch's mine. Wesco then placed an order with Eaton to build the MCCs to the specifications provided by Robertson.

The evidence below showed that Eaton manufactured the MCCs as ordered. Robertson specified seven of the nine MCCs to include a main breaker disconnect, which is a switch that provides means to disconnect power downstream of its location. The remaining two MCCs ordered by Robertson—including the MCC at issue—were specified with a main lug only connection, which allows the MCC to be integrated directly into the customer's electrical distribution system. In order to de-energize this particular MCC, petitioner could have opened a Gang Operated Air Brake ("GOAB"), which is a switching mechanism designed to open (de-energize) a three-phase line with one mechanism. Alternatively, petitioner could have pulled the disconnect fuses on the incoming power lines to the MCC by using a "hot stick"(an insulated telescoping rod), thereby opening the circuits and de-energizing all components downstream of the fuse, including the MCC. Although petitioner was aware of these two separate means of de-energizing the MCC, he elected to begin working on the equipment while it was energized.

It is undisputed that Arch required its employees to de-energize equipment before working on it to avoid electrical shock injury. In this case, petitioner knew the MCC at issue was energized before he began working on it and the record reveals that, on the day of the accident, when Arch's lead electrician, Ronald Gannon, told petitioner to install a ground wire in the MCC, he also told him to de-energize the MCC before performing any work. Petitioner admitted being aware of the risks and hazards of working on energized equipment; that there were warning labels and instructions attached to the MCC at issue that advised employees of the dangers of working on energized equipment; and that he failed to read or heed the warning labels and instructions.

Petitioner filed an amended complaint on May 9, 2012, in which he alleged that the MCC was inherently dangerous because it was designed and manufactured without a switch to de-energize the power circuits of the electrical equipment and without covers to protect users from contacting the internal energized buss bars (electrical conductors), and, as a result, Eaton was strictly liable for all of petitioner's injuries and damages. The amended complaint further alleged that Eaton breached its duty to warn potential users, such as petitioner, of the dangers associated with the use of the MCC, including, but not limited to, failing to prominently affix proper warnings to the subject MCC to warn users that there was not a switch installed in the cabinet to de-energize the power circuits of the electrical equipment. Petitioner also alleged a breach of implied warranty claim.

Discovery ensued and on November 21, 2014, Eaton filed a motion for summary judgment to which petitioner filed a response. A hearing on the motion was conducted on September 10, 2015. By order entered December 22, 2015, the circuit court granted the motion for summary judgment. This appeal followed.

We review de novo petitioner's appeal of the circuit court's summary judgment order. "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W. Va. 189, 451 S.E.2d 755 (1994). Our review is guided by the principle that

2

"'[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992).

*Painter,* 192 W. Va. at 190, 451 S.E.2d at 756, syl. pt. 2. Furthermore,

"[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus point 4, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).

Syl. Pt. 5, *Toth v. Bd. of Parks & Recreation Comm'rs*, 215 W.V a. 51, 593 S.E.2d 576 (2003).

In his first assignment of error, petitioner argues that the circuit court erred in failing to find that Eaton did not comply with its duty to construct an MCC unit with a shut-off switch as required by West Virginia regulations thereby making the unit unsafe for its intended use. Petitioner argues that, according to the report of its expert, Jack Spadaro, Eaton and the other named defendants below, Arch, Coal-Mac, Inc., and Phoenix Coal-Mac Mining, violated 56 C.S.R. 3-37.5(b), which provides that "[e]lectric equipment shall be provided with devices that will permit the equipment to be deenergized quickly in the event of an emergency."[2] Mr. Spadaro's report also identifies other rules, both state and federal, that, in his opinion, were violated by Eaton in connection with the incident,[3] including West Virginia Code § 22A-2-40(17), which states that "[o]perators of coal mines in which electricity is used as a means of power shall comply with the following provisions: . . . . (17) All power circuits and electrical equipment shall be deenergized before work is done on such circuits and equipment except when necessary for trouble shooting or testing."[4]

We find no error. Eaton is a manufacturer of custom electrical distribution systems. Petitioner has failed to demonstrate, or, indeed, to otherwise argue, that the miners' health, safety, and training rules cited in its expert's report are applicable to Eaton. Having failed to show (or attempt to show) that these rules apply to Eaton and imposed upon it some sort of duty

---

[2] Although petitioner argues that Mr. Spadaro also opined that the MCC unit at issue was required to be "equipped or designed in such a manner that it can be determined by visual observation that the circuit is deenergized when the switches are open[,]" under 56 C.S.R. 3-37.5(f), Mr. Spadaro's report does not mention this regulation. The transcript of Mr. Spadaro's deposition is not a part of the appendix record.

[3] None of those regulations are discussed in petitioner's brief.

[4] It appears undisputed that petitioner was not "trouble shooting" or "testing" the equipment at the time the events herein transpired.

to manufacture the MCC at issue with components not included in the specifications identified by the electrical contractor for its customer, we find that petitioner has failed to establish that any genuine issue of material of fact exists on this issue and that summary judgment was properly granted.[5]

In a related argument, petitioner argues that the circuit court erred in finding that the decision to include a main breaker disconnect or other shut-off switch within the electrical distribution system was within the exclusive control of Robertson and Arch, not Eaton. Petitioner argues that, in fact, the evidence showed that Robertson's specifications for the MCC unit were "silent" with regard to whether a shut-off switch was requested and that, for this reason, summary judgment should not have been granted. Petitioner's argument that the jury should have been permitted to decide whether Eaton was either solely responsible or concurrently negligent with Robertson and Arch for constructing the unit without a shut-off switch is based exclusively on petitioner's supplemental answers to Eaton's first request for admissions in which petitioner admitted that the specifications generated by Robertson and ordered by Arch for the MCC at issue "did not include specifications for a main breaker disconnect."[6] Petitioner argues that, thus, it was "Eaton's sole independent decision to not include a shut off switch when the specifications were silent."

We find no error. The undisputed evidence before the circuit court was that Arch contracted with Robertson to design the electrical distribution system for a section of the mine; that Robertson selected the component parts to meet the electrical needs of the mine; that Robertson determined that the MCC at issue should not contain a main breaker disconnect; that Robertson determined that a main lug only connection was appropriate for this particular MCC because the MCC was to be directly incorporated into the electrical distribution at the mine; that Eaton did not inspect the mine before or after the MCC was installed by Robertson; and that Eaton did not conduct any maintenance work on the MCC at issue. Given this overwhelming evidence, petitioner is incorrect in his claim that it was Eaton that decided to not include a shut-off switch. To the contrary, the evidence shows that Eaton manufactured the MCCs exactly as designed and ordered by Robertson. Thus, we find that no genuine issue of material fact exists

---

[5] We note that the circuit court also found—and petitioner does not dispute on appeal—that

> the inclusion of a main breaker disconnect switch within the MCC *would not have terminated all incoming power* and the Plaintiff, in order to de-energize all components of the MCC, *would still have been required to utilize the two existing means to fully de-energize the equipment and avoid the electrical shock injury he sustained.*

(Emphasis added).

[6] The circuit court concluded that Robertson and Arch's "independent decisions not to include a main breaker disconnect or other such 'more convenient' switching mechanism would constitute an intervening cause if, indeed the failure to include such a switch can be considered the proximate cause of Plaintiff's injury."

4

and that summary judgment was properly granted.

Next, we address petitioner's argument that summary judgment was improperly granted with regard to petitioner's claim that the MCC at issue was defective because Eaton designed and manufactured it "without proper warnings that there was not a switch installed in the cabinet to de-energize the power circuits of the electrical equipment." This Court has held that, in strict liability cases, failure-to-warn claims arise "when a product may be safe as designed and manufactured, but which becomes defective because of the failure to warn of dangers which may be present when the product is used in a particular manner." Syl. Pt. 2, in part, *Ilosky v. Michelin Tire Corp.*, 172 W. Va. 435, 307 S.E.2d 603 (1983). A failure-to-warn claim requires proof that the use of the product was foreseeable, that the product was defective due to a failure to warn, and that the failure to warn proximately caused the injury. *Id.* at 442, 307 S.E.2d at 610.

Petitioner concedes that he was aware of the hazards associated with working on or near energized equipment; knew the MCC was energized when he began work on it the day of the accident; and failed to shut off the MCC unit by the two means available to him. However, petitioner argues that "the method[s] of turning off the unit w[ere] unreasonable" and that "a switch was not installed on the MCC unit;" thus, he contends, a jury should have been permitted to determine the comparative negligence of the parties. *See* Syl. Pt. 3, *Bradley v. Appalachian Power Co.*, 163 W. Va. 332, 256 S.E.2d 879 (1979) (holding that "[a] party is not barred from recovering damages in a tort action so long as his negligence or fault does not equal or exceed the combined negligence or fault of the other parties involved in the accident.").

We find no error. In addition to the fact that petitioner knew that the MCC unit at issue was energized before he began his work and that he elected to work on it without de-energizing it by either of the two means available, the undisputed evidence also shows that petitioner knew of the risks and hazards associated with working on energized equipment, was told by his supervisor to de-energize the MCC unit at issue before working on it, and knew there were warning labels and instructions attached to the subject MCC and an instruction manual advising of the dangers associated with working on energized equipment.

This Court has held that

> [i]n a comparative negligence or causation action the issue of apportionment of negligence or causation is one for the jury or other trier of the facts, and only in the clearest of cases where the facts are undisputed and reasonable minds can draw but one inference from them should such issue be determined as a matter of law.

Syl. Pt. 2, in part, *Reager v. Anderson*, 179 W. Va. 691, 371 S.E.2d 619 (1988).

In this case, we find that reasonable minds could draw but one inference from the undisputed facts— that the MCC at issue was not defective due to a failure to warn, and, even if any such defect existed, it was not the proximate cause of petitioner's injuries. Though petitioner contends that the labels affixed to the MCC and the instruction manual provided by Eaton should have warned him that there was no main breaker disconnect incorporated within the MCC

5

structure, he admits that he failed to read the warnings and manuals that were in place at the time of the accident. Importantly, there is no evidence—and, indeed, petitioner does not claim—that he would have heeded or read additional warnings or that such additional warnings would have prevented the accident. Therefore, we conclude that the circuit court did not err in finding that no genuine issue of material fact exists on this issue.

Finally, petitioner argues that the circuit court erred in granting summary judgment because the jury should have been permitted to consider that Robertson and Arch took remedial measures subsequent to petitioner's injury by installing a shut-off switch on the MCC at issue. *See* W.Va. R. Evid. 407 (stating that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: (1) negligence; (b) culpable conduct; (c) a defect in a product or its design; or (d) a need for a warning or instruction. But the court may admit this evidence for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures."). Importantly, although the evidence shows that, after petitioner's accident, Arch and Robertson installed a shut-off switch between the MCC and the fuse disconnects—that is, they modified the electrical distribution system but not the MCC at issue—petitioner does not allege, nor does the evidence show, that Eaton took any measure that would have made petitioner's injury less likely to have occurred. Furthermore, our review of the appendix record reveals that petitioner failed to raise this issue in his response to Eaton's motion for summary judgment and that his meager argument on the issue at the summary judgment hearing failed to include any legal authority supporting his claim that an exception to Rule 407 applies to this case.

This Court has repeatedly stated that "[o]ur general rule . . . is that when nonjurisdictional questions have not been decided at the trial court level and are then first raised before this Court, they will not be considered on appeal." *Whitlow v. Bd. of Educ. of Kanawha County,* 190 W. Va. 223, 226, 438 S.E.2d 15, 18 (1993). We noted in *Whitlow:*

> The rationale behind this rule is that when an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made on appeal. Moreover, we consider the element of fairness. When a case has proceeded to its ultimate resolution below, it is manifestly unfair for a party to raise new issues on appeal. Finally, there is also a need to have the issue refined, developed, and adjudicated by the trial court, so that we have the benefit of its wisdom.

190 W. Va. at 226, 438 S.E.2d at 18. Therefore, we decline to address this assignment of error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 10, 2016

6

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING:**

Justice Robin Jean Davis