No. 2--03--0786

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

THE PEOPLE 
ex rel.
 ROBERT J. ) Appeal from the Circuit Court

KLAEREN II, FRIEDA CHERNOBROV, ) of Du Page County.

CARLE R. WUNDERLICH II, and )

AIZIK CHERNOBROV, ) 

)

Plaintiffs-Appellees and )

Cross-Appellants, )

)

v. ) No. 99--CH--179

)

THE VILLAGE OF LI
SLE )

) 

Defendant-Appellee ) 

) 

(Meijer, Inc. and Meijer Stores Limited ) 

Partnership, Defendants-Appellants and ) Honorable

Cross-Appellees; Saint Procopius Abbey, ) Bonnie M. Wheaton,

Defendant). ) Judge, Presiding.

______________________________________________________________________________

PRESIDING JUSTICE O'MALLEY delivered the opinion of the court:

This case again comes before us, this time on the appeal of defendants Meijer, Inc. and Meijer Stores Limited Partnership (collectively, Meijer),  from the judgment of the circuit court of Du Page County granting in part the motion for summary judgment of plaintiffs, Robert J. Klaeren II, Frieda and Aizik Chernobrov, and Carle R. Wunderlich II.  Plaintiffs also cross-appeal from the trial court's judgment denying them leave to file an amended complaint and a petition for attorney fees.  We affirm.

The basic facts of this case are unchanged from the earlier appeals.  See 
People ex rel. Klaeren v. Village of Lisle
, 316 Ill. App. 3d 770 (2000) (
Klaeren I
); 
People ex rel. Klaeren v. Village of Lisle
, 202 Ill. 2d 164 (2002) (
Klaeren II
).  Accordingly, only a brief recapitulation of the salient facts is necessary to set the stage for our analysis; additional pertinent facts will be discussed as necessary in the body of our analysis.

BACKGROUND

The Project and the Public Hearing

Meijer, Inc. decided to build and open a new store in the Village of Lisle (village).  To that end, it entered into a contract with the Saint Procopius Abbey (Abbey) to purchase a 60-acre parcel of land.  Meijer, Inc. then entered into the village's zoning process, seeking to have the village pass the necessary ordinances regarding the annexation, rezoning, and special use needed to develop the parcel.  Plaintiffs steadfastly opposed Meijer, Inc. throughout the process, concerned about the impact that the new Meijer store would have on their neighboring lands.

On July 9, 1998, the village held a public hearing regarding the Meijer, Inc. development, and this hearing was the focus of the earlier appeals.  Pertinently, the village board of trustees (village board), the village plan commission (plan commission), and the village zoning board of appeals (zoning board) convened a joint hearing in a local junior high school auditorium.  The joint hearing was heavily attended by village residents, who formed a standing-room-only crowd within the hot and too-small auditorium.

At the beginning of the joint hearing, the village mayor, Ronald Ghilardi, who also presided over the hearing, stated:

"This is a public hearing.  It is not a debate.  There will be no attempt at tonight's hearing to answer any question raised by this audience.  Questions may be addressed during the review process ***.

To the extent possible the speaker will address questions and concerned [
sic
] raised by the combined boards this evening.  

***

The petitioner will be first subject to any questions by the assembled boards.  We will attempt to deal with each individual aspect of the presentation as it's made.

People in the audience speaking in favor of the proposal will then be heard.  People in the audience speaking in opposition of the proposal will then be heard.  The petitioner will then be allowed to make closing comments.

After closing comments by the petitioner, the public hearing will be adjourned.

Public records will remain open for written comments by interested parties.  Any written comments must be received at the Village offices by 4:30 p.m. Friday, July 31st.

***

To be fair to everyone in the audience, I ask that you limit your comments to two minutes each.  I will be the time keeper and will let you know when 15 seconds remain.

***

No one will be allowed to speak a second time until everyone has an opportunity to speak once.  That requirement will also be applicable to members of the assembled boards."

The hearing proceeded under the rules set out by the mayor.  A number of witnesses spoke on behalf of Meijer, Inc., including its architect, land planner, traffic consultant, and hydraulic engineer for the proposed project.  During these witnesses' presentations, various members of the combined boards asked them questions.

After the Meijer, Inc. presentation was completed, the mayor invited those audience members in favor of the project to speak.  Two people spoke in favor of the project and more than 40 people spoke in opposition to the project.  One of the opponents questioned the procedures being used at the hearing, and the mayor explained that only a single representative would be permitted to speak on behalf of any group or organization and that the two-minute time limit would be enforced.  Mayor Ghilardi continued:

"Rather than try and debate with you the procedure we are going to try and follow, I tried to explain at the beginning of the meeting.  My instructions would give everyone who wants to speak or had a written comment an opportunity to be heard.  I think that is fair.

No matter what we do it is going to be characterized as being unfair.  That being the case, we are going to proceed with the suggestion I made."

The opponents raised various individual concerns about the project, including whether the project would have a greater impact on traffic than Meijer, Inc. predicted, whether the project would decrease the quality of life of the neighborhood and was inappropriate, and whether unanticipated noise pollution would occur as a result of the parking lot traffic, snow removal in the winter, and the use of garbage compactors.  In addition, several opponents identified questions that they wanted the assembled bodies to ask the Meijer, Inc. representatives.  Several times during the public comment portion of the hearing, the mayor warned speakers that their time had expired or was about to expire.

Following the hearing, the zoning board and the plan commission voted to deny annexation and rezoning of the subject property.  The village board, however, approved the plan and made preparations to vote to approve the annexation, rezoning, and special use.

Plaintiffs' Complaint and Underlying Proceedings in the Trial Court

On February 11, 1999, plaintiffs filed a complaint against the village, seeking, pertinently, an injunction to prevent its vote approving the annexation, rezoning, and special use Meijer, Inc. was seeking in order to develop the subject property.  Plaintiffs' injunction was denied because they had failed to join all of the necessary parties.  Shortly thereafter, the village board adopted the necessary ordinances and approved the necessary resolutions to annex, rezone, and grant a special use for the subject property.  Plaintiffs then filed an amended complaint adding Meijer, Inc. and the Abbey as defendants and adding a 
quo warranto
 claim.  On September 14, 1999, plaintiffs obtained a temporary  restraining order that halted Meijer, Inc.'s site preparation on the subject property.  On October 4, 1999, the trial court held a hearing on plaintiffs' motion for a preliminary injunction.

On October 18, 1999, the trial court issued a memorandum opinion and order granting the preliminary injunction.  Relying primarily upon 
E&E Hauling, Inc. v. County of Du Page
, 77 Ill. App. 3d 1017 (1979), the trial court held that, although Mayor Ghilardi had the right, as chair of the public hearing, to impose reasonable conditions on the public's participation in the hearing, he could not completely deny plaintiffs the right to question the witnesses for Meijer, Inc.  The trial court ordered that no further activity be undertaken on the Meijer, Inc. site either until further court order or until the village held a proper public hearing on the matter.  Defendants appealed this ruling.

Review on Appeal of the Preliminary Injunction Order

Defendants appealed from the trial court's order granting the preliminary injunction.  This court affirmed the trial court's order, holding that the complete preclusion of any cross-examination at the hearing violated due process and rendered void the zoning modifications granted by the village.  
Klaeren I
, 316 Ill. App. 3d at 785.  One justice dissented, contending that municipal annexation and zoning questions are purely legislative functions requiring only that the municipal board allow interested parties to present their cases rather than allowing them to cross-examine opposing witnesses.  
Klaeren I
, 316 Ill. App. 3d at 787-88 (Rapp, J., dissenting).

Our supreme court allowed defendants leave to appeal this court's ruling.  The supreme court affirmed this court, holding that a municipal body acts in a quasi-judicial capacity when conducting a hearing on a special use petition.  
Klaeren II
, 202 Ill. 2d at 183.  The court concluded that the preclusion of plaintiffs' right to cross-examine witnesses was a denial of their due process rights, supporting a sufficient showing by plaintiffs that they had a likelihood of success on the merits, which entitled them to the preliminary injunction.  
Klaeren II
, 202 Ill. 2d at 185.

Following the supreme court's decision, on December 12, 2002, the Abbey sold the property to Meijer Stores Limited Partnership and upon the remand of this cause to the trial court, the partnership was substituted as a defendant in place of the Abbey.  Plaintiffs and the Meijer defendants moved for summary judgment, standing upon the record established in the preliminary injunction hearing.  In addition, plaintiffs moved to amend their complaint to add a claim for a writ of 
certiorari
 and to file a petition for attorney fees.

On April 3, 2003, the trial court heard argument on the cross-motions for summary judgment, indicated that it was inclined to rule in favor of plaintiffs on the merits, and asked the parties to prepare a judgment order.  On May 20, 2003, Meijer asked the trial court to reconsider its position on applying the supreme court's decision in 
Klaeren II
 to the facts of this case, basing its request on this court's opinion in 
Oak Grove Jubilee Center, Inc. v. City of Genoa
, 338 Ill. App. 3d 967, 974 (2003), in which this court held that 
Klaeren II
 should not be given retroactive application.  Similarly, Meijer requested that the trial court not apply 
Klaeren II
 retroactively to this cause, notwithstanding the fact that it is the same cause.  The trial court denied Meijer's motion to reconsider and, on June 25, 2003, issued its final judgment in this matter.

The trial court held that 
Klaeren II
 applied to the facts of this case, stating:

"The [s]upreme [c]ourt's decision in this case did not change the law, but rather re-affirmed the law requiring that cross-examination be available to interested parties in a public hearing on a special use application.  Although adopting a different rationale than advanced by this [c]ourt or the [a]ppellate [c]ourt, the result in the [s]upreme [c]ourt was the same, and therefore the [s]upreme [c]ourt decision will be applied retroactively to the public hearing held in this case.  Upon review of the competing motions for summary judgment, and in light of the memoranda and argument, the [c]ourt finds that the decision of the [s]upreme [c]ourt will be applied retroactively as to these parties in litigation."

The trial court further held that, although the public hearing involved three separate municipal bodies considering different facets of the development proposal, the other purposes of the hearing could not be separated from the zoning hearing on the special use permit, and the entire hearing violated plaintiffs' rights to due process:

"The joint public hearing in this case so intricately intertwined all of the proceedings from the various bodies that they cannot be separated.  In this circumstance, where the mechanism of a joint public hearing was used, and where there was no separation of proceedings, the most stringent procedural requirement must apply to all approvals addressed in the joint public hearing to preserve procedural due process."

The trial court reasoned that, because the most stringent procedural requirement, namely, cross-examination during the special use hearing, was not allowed at the July 8, 1998, public hearing, all of the approvals at issue here--the annexation, the rezoning, the special use and planned unit development, and the subdivision--were void.  The trial court also found that plaintiffs' attempt to amend their complaint was untimely, coming some 3½ years after the case had been filed.

The trial court granted summary judgment in favor of plaintiffs on counts I and II of plaintiffs' first amended complaint and dismissed count III as moot.  The upshot of the trial court's judgment was to invalidate the resolutions and ordinances approving the annexation agreement, the annexation and rezoning of the subject property, and the grant of the special use permit, along with the approval of the other entitlements granted for the subject property.  It was determined that the subject property was not validly annexed but, instead, remained in unincorporated Du Page County.  On July 14, 2003, Meijer timely appealed.  On July 28, 2003, plaintiffs timely filed their notice of cross-appeal.

ANALYSIS

Meijer's Appeal

On appeal, Meijer raises two issues.  First, it contends that the trial court erred in applying 
Klaeren II
 retroactively to this case because 
Klaeren II
 wrought a sea change in the law of special uses and it would be grossly inequitable to apply the new law to Meijer.  Meijer also argues that, notwithstanding the outcome of its first argument, 
Klaeren II
 would invalidate only the special use portion of the July 9, 1998, public hearing.  It contends that, based on this consideration, the trial court erred in invalidating the annexation, rezoning, and subdivision of the subject property.

Turning to Meijer's first issue on appeal, we are struck by the incongruity of the argument.  Essentially, Meijer argues that, because this court held that 
Klaeren II
 was not to be applied retroactively in 
Oak Grove
, 347 Ill. App. 3d at 984, we should find that decision to be controlling and similarly conclude that 
Klaeren II
 does not apply here.  Meijer thus urges us to apply the rule set forth in 
Klaeren II
 only prospectively, even as regards the parties herein.

We find this argument to be virtually a 
non sequitur
.  Meijer is asking that the rule announced in this case not be applied to this case--ignoring the 
sotto voce
 general rule that the law announced in a case is applied to the case in which it is announced.  See, 
e.g.
, 
Elg v. Whittington
, 119 Ill. 2d 344, 359 (1987) ("We therefore hold that our decision will apply prospectively to all cases in which the notice of appeal was filed or due to be filed on or after our decision in this case was first announced, November 16, 1987.  However, our decision remains in effect for the parties in the instant case").  In addition, Meijer overlooks or ignores the standard definition of prospectivity: "Prospective application means that, on the date of filing [the opinion], the new rule will affect pending cases and all cases brought after the date of filing.  In addition, the parties to the subject case will also be affected by the new rule."  
Gallik v. County of Lake
, 335 Ill. App. 3d 325, 332 (2002); see also 
Department of Transportation ex rel. People v. Hunziker
, 342 Ill. App. 3d 588, 602-03 (2003), quoting 
John Carey Oil Co. v. W.C.P. Investments
, 126 Ill. 2d 139, 149 (1988) (" 'On those occasions when prospective application is warranted, the holding of the court still controls the case at bar' ").  We note that, while Meijer's argument may be strange, Meijer fortuitously supported it with citation to a relevant case in which the court declined to subject the parties in that case to the rule announced in that case.  
Bogseth v. Emanuel
, 166 Ill. 2d 507, 517 (1995).  Meijer did not note that exception to the general rule of prospectivity in any of its argument.  Nevertheless, as a result of the fortuity, we will undertake the analysis set forth in 
Bogseth
 regarding prospectivity and apply it to the parties in this cause.  

"[W]hether a ruling will be applied prospectively will depend upon whether the decision to be applied nonretroactively establishes a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.  If either of these criteria is met, the question of prospective or retroactive application will be answered by considering whether, given the purpose and prior history of the rule, its operation will be retarded or promoted by prospective or retroactive application and whether prospective application is mandated by a balance of the equities."  
Bogseth
, 166 Ill. 2d at 515.

Thus, we must first determine whether the relevant law has been changed, and, if that has occurred, proceed to the remaining prongs of the analysis set forth in 
Bogseth
.  

Meijer argues, of course, that 
Klaeren II
 changed the law.  We agree that 
Klaeren II
 changed the law, insofar as it relates to whether a municipal body acts administratively or legislatively when acting upon a special use permit.  
Klaeren II
, 202 Ill. 2d at 183.  We do not agree, however, that the 
relevant
 law, namely, whether the opportunity to conduct cross-examination is required in a municipal hearing on a special use permit, was changed by 
Klaeren II
.  

E&E Hauling
 held that the right of cross-examination was integral to the validity of a hearing before a zoning board.  
E&E Hauling
, 77 Ill. App. 3d at 1021-22.  
Klaeren II
 limited the scope of the holding in 
E&E Hauling
, determining that the "full panoply of due process rights" should not necessarily be available when any public hearing is conducted before any tribunal or body as listed in the Illinois Municipal Code (65 ILCS 5/1--1--1 
et seq.
 (West 2002)).  
Klaeren II
, 202 Ill. 2d at 181.  Meijer seizes upon the supreme court's criticism of both this court's rationale in 
Klaeren I
 and the scope of 
E&E Hauling
 in an attempt to argue that 
Klaeren II
 changed not the characterization of the hearing on a special use permit but rather the availability of the right of cross-examination in such a hearing.  Meijer's argument is misplaced.

The supreme court held that the right of cross-examination accrued in a hearing before a zoning board on a special use permit, just as the court in 
E&E Hauling
 determined that the right of cross-examination was available in any hearing before a zoning board.  
Klaeren II
, 202 Ill. 2d at 185.  
Klaeren II
 limited 
E&E Hauling
, however, by recognizing that the right to engage in cross-examination was not unfettered and that a municipal body could reasonably impose limits on that right, based upon the circumstances of the hearing specifically before it.  
Klaeren II
, 202 Ill. 2d at 185.  Thus, 
Klaeren II
 did not enunciate a new change in the law establishing the right of cross-examination at a zoning board hearing on a special use permit; rather, it limited that already-existing right.  

Plaintiffs' challenge throughout this case steadfastly has been that they were deprived of due process when the mayor forbade any cross-examination in the joint hearing, which included, among other things, a hearing on a special use permit.  Thus, the only relevant inquiry as to a change in the law must concern whether the right to cross-examination in a hearing on a special use permit existed before 
Klaeren II
.  As noted above, since at least 1979, the courts in this state have recognized that public hearings before zoning boards include the right to cross-examination.  
Klaeren II
, at most, limited that right and enhanced a municipal body's discretion in implementing that right, but it did not dispose of it or create it afresh.  Accordingly, we hold that the relevant law was not changed by 
Klaeren II
.  As a result of this conclusion, we need not progress further in the 
Bogseth
 prospectivity analysis.  As Meijer has shown no change in the law, there is no reason not to apply 
Klaeren II
 to this case.

In an effort to tidy loose ends, we note that Meijer faults the trial court for failing to apply the holding of 
Oak Grove
 to this case and give 
Klaeren II
 only prospective application.  
Oak Grove
 is distinguishable in that it did not involve the deprivation of the right of cross-examination and, instead, involved the central 
Klaeren II
 holding about the characterization of municipal bodies' public hearings as either legislative or administrative/quasi-judicial.  
Oak Grove
, 338 Ill. App. 3d at 974-75.  Here, by contrast, the sole issue has always been the deprivation of the right of cross-examination and, as shown above, did not involve a change in the relevant law, only a refinement or limitation.

Meijer raises a number of other points regarding this issue, but they are based on its analysis of the relevant 
Bogseth
 factors.  As we have found that 
Bogseth
 does not apply because the relevant law was not changed by 
Klaeren II
, we need not address this issue further.

Next, Meijer argues that only the special use approval need be invalidated; the other approvals, resolutions, and ordinances stemming from the July 9, 1998, hearing should not be affected.  Meijer reasons that, because the July 9, 1998, hearing involved several aspects, namely, hearings before the village board, the plan commission, and the zoning board, and because 
Klaeren II
 held that only a hearing on a special use permit before a zoning board is administrative/quasi-judicial, the remaining portions of the hearing before the village board and plan commission do not lose their legislative character.  As a result, Meijer asserts that the village board and the plan commission were not required to provide the right of cross-examination in conjunction with their hearings, and the deprivation of that right should not affect the municipal actions taken as a result of those hearings.  We disagree.

The trial court observed:

"The joint public hearing in this case so intricately intertwined all of the proceedings from the various bodies that they cannot be separated.  In this circumstance, where the mechanism of a joint public hearing was used, and where there was no separation of proceedings, the most stringent procedural requirement must apply to all approvals addressed in the joint public hearing to preserve procedural due process."

The record abundantly supports the trial court's conclusion that the public hearing was not separable into its component parts.  The various village bodies did not alternate in chairing the hearing; the mayor retained control throughout.  There were no pauses or segues to show either the public or the village participants that the hearing was progressing from consideration of the annexation to the special use and so on.  In short, all of the components of the hearing were, as the trial court observed, intricately intertwined with no hope of separation.

We also agree with the trial court's assessment that, "where the mechanism of a joint public hearing was used, and where there was no separation of proceedings, the most stringent procedural requirement must apply to all approvals addressed in the joint public hearing to preserve procedural due process."  This pronouncement is implicitly supported in 
Klaeren II
, 202 Ill. 2d at 185 ("[s]ince the joint procedure used by the village involved a special use request, it would be a denial of due process not to afford interested parties the right to cross-examine adverse witnesses").  Accordingly, we confirm the trial court's assessment and hold that, where a municipality uses a joint hearing (which it may), and where it does not segregate the hearing into its component parts (such as addressing an annexation, completing all tasks related to the annexation, then clearly moving on to address another issue of interest to one of the other component bodies of the joint hearing), the most stringent procedural requirement must apply to all approvals addressed in the joint hearing.  We hasten to point out that we are not holding that any joint public hearing requires the most stringent procedural requirement of any of its components.  As we have noted above, where a municipal body takes pains to separate the component hearings by, for example, announcing that the hearing is moving on to address a specific subject, the procedures required for that component will suffice to assure that the participants receive the process to which they are due.  Our holding is not and should not be seen to be a blanket condemnation of the joint hearing process.  Rather, it applies specifically to the, we hope, unusual circumstances present in this case, the total denial of cross-examination and an inseparably intertwined joint hearing.  As the joint hearing addressed the request for a special use permit which, under 
Klaeren II
 (as well as 
E&E Hauling
), requires that the village allow interested parties to cross-examine adverse witnesses, the village's denial of any cross-examination necessarily violated procedural due process and invalidates not just the special use permit but all of the other approvals addressed in the joint hearing:  the annexation, the annexation agreement, the rezoning, and the subdivision of the subject property.

Meijer urges that the severability clauses contained in the ordinances, the resolutions, and the annexation agreement should operate to save those actions.  The argument focuses on the wrong thing.  For example, the annexation agreement provides:

"If any provision *** of this agreement or its application to any *** property or portion of property is held invalid, or if any ordinance or resolution adopted pursuant to this agreement or its application to any *** property, or portion of property is held invalid, such invalidity shall not affect the application or validity of any other provisions *** of this agreement or other ordinances or resolutions passed pursuant hereto."

The severability clause refers to an attack on the agreement or an ordinance involved with the agreement; here, we have a more fundamental flaw, a failure of process before we even reach the stage where the agreement or an ordinance or resolution could be attacked.  The severability clauses do not apply to the facts presented in this case, which involve a breakdown of due process at the fact-finding stage, far before any of the problems the severability clauses address would arise.  We reject Meijer's argument.

Meijer also argues that only the special use approval was of an administrative/quasi-judicial nature and that all the other actions (annexation, rezoning, and subdivision) were legislative.  While that is true, all the other actions were undertaken cheek-by-jowl with the special use.  As we have previously noted, where there is not a structural separation of the components of a joint public hearing, the municipal bodies engaged in the joint hearing must afford the participants the most stringent procedural protections of any of the component parts of the joint hearing.  Here, because the hearings on the other actions were undertaken simultaneously with the special use hearing, the village was required to provide the public the opportunity to cross-examine witnesses on pain of having all of the actions taken as a result of the joint hearing declared invalid.  Thus, even though the annexation, rezoning, and subdivision issues were legislative, participants should have been allowed to cross-examine witnesses at the joint hearing because the special use permit was being simultaneously considered.  Because cross-examination (or any examination) was prohibited, the entirety of the hearing and the actions taken as a result of the hearing fail to pass muster.

Meijer's argument in this regard is flawed for another reason.  While Meijer correctly pounds away at the theme that annexations, rezonings, and subdivisions are legislative and, as a result, a municipal body engaged in a public hearing on such issues is not required to provide cross-examination, it views each discretely and out of the context in which it arose in this case.  Thus, while we cannot disagree with Meijer's argument in a vacuum, we note that it ignores the factual circumstances here, which eviscerate its force and viability because the joint hearing was not segregated among the components of special use, annexation, rezoning, and subdivision.  As a result, Meijer's relentless hammering at legislative/administrative distinction is inapposite to the facts of this case.  

Meijer also looks to 
Klaeren II
 for support of its argument that only the special use portion of the joint hearing was invalid and the remaining business resolved as a result of the joint hearing should remain in force and undisturbed.  According to Meijer, the supreme court wholeheartedly endorsed the procedures used in the joint hearing.  We cannot agree.

First, Meijer shuffles the order of the supreme court's argument.  While quoting at length from whatever Meijer believes to be supportive of its position, it completely ignores the countervailing considerations raised by the supreme court.  Second, and more importantly, the supreme court declined the parties' invitation "to comment upon the procedures used by the village as a whole."  
Klaeren II
, 202 Ill. 2d at 187.  While the supreme court expressed general sentiments about both the advantages and the disadvantages of using a joint hearing to resolve a number of related issues, it did not actually pass judgment on the procedure used by the village in the joint hearing.  Pertinently, however, it did note that, "[w]hile time limits may be necessary in certain circumstances, the two-minute time limit imposed here would have been clearly improper had the proceedings complied with the due process requisite of cross-examination for interested parties."  
Klaeren II
, 202 Ill. 2d at 188.  We find the tenor of the supreme court's comments to be, at best, neutral regarding the joint hearing.

We also note that Meijer caps its argument with a quote from 
Klaeren II
, suggesting that a joint hearing would never be problematic and attempting to extrapolate from that quote that the village's procedures at issue did not run afoul of due process concerns.  We find this argument to be misleading, as Meijer failed to include the supreme court's important qualification that actually changed the endorsement quoted by Meijer to a condemnation of the procedures used by the village in this matter.  To clarify our objection to Meijer's method of argument, we quote both the portion recited by Meijer in its brief (which is set out in plain text) as well as the portion omitted (which we designate by bold text):

"As we have noted, the joint hearing in this case involved multiple decisions by three separate intra-municipal bodies.  Viewed independently based on the individual purposes of each municipal body, whether and to what extent interested parties should be afforded the right to cross-examine adverse witnesses varies depending upon the type of hearing at issue.  When a municipal body acts legislatively, its decision is subject only to review for arbitrariness as a matter of substantive due process.  [Citation.]  
The joint hearing in this case, however, involved a quasi-judicial proceeding in that a special use application was heard and interested parties were not afforded the right to cross-examine adverse witnesses.  In light of this deficiency, we agree with the trial court's and appellate court's ultimate conclusion that plaintiffs enjoy a likelihood of success on the merits of their claim that their constitutional right to due process was infringed.
"  
Klaeren II
, 202 Ill. 2d at 187.

Thus, the supreme court did not endorse the procedures used by the village, contrary to Meijer's argument.  Moreover, the supreme court's reasoning expressed in the above-quoted passage clearly supports our determination that, where a joint hearing is held in which there is no separation of the multiple purposes, the most stringent procedural requirements must be applied to the whole of the hearing.  Accordingly, we find Meijer's argument to be without merit.

We note further that our discussion of the 
arcana
 of retroactive/prospective application of a judicial decision has led us mildly astray from the central issue here, namely, whether the trial court properly granted summary judgment in favor of plaintiffs and against Meijer.  Summary judgment is appropriately granted where the pleadings, depositions, and admissions on file, when viewed in the light most favorable to the nonmoving party, reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2--1005(c) (West 2002); 
Jinkins v. Lee
, 209 Ill. 2d 320, 329 (2004).  We review 
de novo
 the trial court's grant of summary judgment
.  
Jinkins
, 209 Ill. 2d at 329.  Applying this standard to the ultimate question at issue on Meijer's appeal, we hold that the trial court properly granted summary judgment in favor of plaintiffs.

Plaintiffs' Cross-Appeal

On cross-appeal, plaintiffs raise two issues.  First, plaintiffs contend that the trial court's refusal to allow them to file a petition for attorney fees was erroneous as a matter of law.  Second, plaintiffs contend that the trial court abused its discretion by refusing to allow them to amend their complaint to add a claim for a writ of 
certiorari
.  We address each contention in turn.

Plaintiffs base their claim for attorney fees on section 11--13--15 of the Illinois Municipal Code (65 ILCS 5/11--13--15 (West 2002)).  Section 11--13--15 provides:

"In case any building or structure, including fixtures, is constructed, reconstructed, altered, repaired, converted, or maintained, or any building or structure, including fixtures, or land, is used in violation of an ordinance or ordinances adopted under Division 13, 31 or 31.1 of the Illinois Municipal Code [(65 ILCS 5/11--13--1 
et seq.
, 11--31--1 
et seq.
, 11--31.1--1 
et seq.
 (West 2002))], or of any ordinance or other regulation made under the authority conferred thereby, the proper local authorities of the municipality, or any owner or tenant of real property, within 1200 feet in any direction of the property on which the building or structure in question is located who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding (1) to prevent the unlawful construction, reconstruction, alteration, repair, conversion, maintenance, or use, (2) to prevent the occupancy of the building, structure, or land, (3) to prevent any illegal act, conduct, business, or use in or about the premises, or (4) to restrain, correct, or abate the violation.  When any such action is instituted by an owner or tenant, notice of such action shall be served upon the municipality at the time suit is begun, by serving a copy of the complaint on the chief executive officer of the municipality, no such action may be maintained until such notice has been given.

In any action or proceeding for a purpose mentioned in this section, the court with jurisdiction of such action or proceeding has the power and in its discretion may issue a restraining order, or a preliminary injunction, as well as a permanent injunction, upon such terms and under such conditions as will do justice and enforce the purposes set forth above.

If an owner or tenant files suit hereunder and the court finds that the defendant has engaged in any of the foregoing prohibited activities, then the court shall allow the plaintiff a reasonable sum of money for the services of the plaintiff's attorney.  This allowance shall be a part of the costs of the litigation assessed against the defendant, and may be recovered as such.

An owner or tenant need not prove any specific, special or unique damages to himself or his property or any adverse effect upon his property from the alleged violation in order to maintain a suit under the foregoing provisions."

The award of attorney fees under section 11--13--15 is mandatory and not discretionary, based on a finding that the defendant has engaged in prohibited activity.  
Palella v. Leyden Family Service & Mental Health Center
, 79 Ill. 2d 493, 501 (1980).  Plaintiffs maintain that they filed suit under section 11--13--15 and that the court found that Meijer had engaged in prohibited conduct by beginning site preparation work.  According to plaintiffs, the trial court erred by refusing to reserve the attorney-fee issue for a later hearing.  We disagree.

The flaw in plaintiffs' argument is fundamental:  plaintiffs did not indicate that their action was brought under the auspices of section 11--13--15.  It is well settled that a party will recover, if at all, only according to the case it has made for itself by its pleadings.  
American Standard Insurance Co. v. Basbagill
, 333 Ill. App. 3d 11, 15 (2002).  Because plaintiff did not seek to invoke section 11--13--15 in its complaint, it cannot offer the issue for our review, notwithstanding the fact that it was raised in the trial court, because "[p]roof without pleadings is as defective as pleadings without proof."  
American Standard
, 333 Ill. App. 3d at 15.

Equally, if not more, problematic is the fact that plaintiffs' allegations were directed against the village, and not Meijer.  Thus, plaintiffs were not seeking to restrain Meijer's illegal actions but, instead, were attempting to force the village to enforce its own ordinances in passing upon the various requests made by Meijer in connection with the proposed development of the subject property.  It is also equally well settled that section 11--13--15 does not allow a private landowner to maintain a cause of action against a municipality to enforce compliance with its own ordinances.  
City of Aurora v. Navar
, 210 Ill. App. 3d 126, 138 (1991); 
Heerey v. Berke
, 179 Ill. App. 3d 927, 934 (1989).  Based on these considerations, we hold that the trial court properly refused to allow plaintiffs to file a petition for attorney fees.

Plaintiffs also contend that the trial court abused its discretion by refusing to allow plaintiffs to amend their complaint to add a claim for a writ of 
certiorari
.  However, plaintiffs concede that they will have suffered no prejudice if the trial court's ruling is affirmed on appeal.  As we have affirmed the trial court's ruling and because an appeal cannot be maintained where there is no adverse result from which to appeal (
Illinois Central R.R. Co. v. Accident & Casualty Co. of Winterthur
, 317 Ill. App. 3d 737, 743 (2000)), we need not further address this issue.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

BOWMAN and CALLUM, JJ., concur.