607 S.E.2d 833

**Tommy ADKINS, Petitioner Below, Appellee,**

v.

**Jane L. CLINE, Commissioner, Division of Motor Vehicles, West Virginia Department of Transportation, Respondent Below, Appellant.**

**Tony J. Arbaugh, Petitioner Below, Appellee,**

v.

**Jane L. Cline, Commissioner, Division of Motor Vehicles, West Virginia Department of Transportation, Respondent Below, Appellant.**

Nos. 31693, 31694.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 14, 2004.

Decided Dec. 1, 2004.

506

Charles Joseph Stevens, Stevens & Stevens, Hamlin, for the Appellee.

Darrell V. McGraw, Jr., Attorney General, Janet E. James, Assistant Attorney General, Charleston, for the Appellant.

PER CURIAM.

This matter is before this Court upon consolidated appeals [1] by the Division of Motor Vehicles, West Virginia Department of Transportation (hereinafter "DMV" or "Appellant") from June 13, 2003, decisions of the Circuit Court of Lincoln County reversing the administrative drivers' license revocations of Tommy Adkins and Tony J. Arbaugh (hereinafter "Appellees") and remanding those cases to the DMV Commissioner for further proceedings. The Appellees were separately arrested for DUI and subjected to administrative license revocations by the DMV. The revocations were stayed pending appeal. Based upon the fact that criminal charges against the Appellees did not result in convictions, the Circuit Court of Lincoln County reversed the DMV's administrative license revocations and remanded for further proceedings consistent with this Court's decision in *Choma v. West Virginia Division of Motor Vehicles*, 210 W.Va. 256, 557 S.E.2d 310 (2001). The DMV now appeals that action. Upon thorough review of the record, briefs, and applicable precedent, we affirm the decision of the lower court and permit the remand to the DMV Commissioner, as ordered by the lower court, for further evaluation and final determination of these administrative license revocation issues.

I. Factual and Procedural History

A. Tony J. Arbaugh

Appellee Arbaugh was arrested for DUI on January 1, 1994. On January 8, 1994, his license was revoked for a period of six months by DMV, with a final revocation order being entered on September 28, 1995, subsequent to Mr. Arbaugh's challenge to the revocation. On October 26, 1994, Mr. Arbaugh was acquitted of criminal charges arising from the alleged DUI. Mr. Arbaugh appealed the DMV administrative license revocation to the lower court, and, on October 5, 1995, the revocation was stayed pending a decision.

B. Tommy Adkins

Appellee Adkins was arrested on September 22, 1996, for DUI. On October 4, 1996, his license was revoked by the DMV, with a

---

**1.** The appeals were consolidated by order of this Court on February 11, 2004.

final revocation order being entered on October 31, 1997, subsequent to Mr. Adkins' challenge to the revocation. On June 4, 1998, the criminal charges arising from the alleged DUI were dismissed. Appellee Adkins appealed the license revocation to the lower court, and the revocation was stayed pending a decision.

### C. Impact of *Choma v. West Virginia Division of Motor Vehicles*

■ On November 28, 2001, while the stays in the Appellees' cases remained pending, this Court issued its opinion in *Choma*. Syllabus point three of *Choma* announced that the DMV Commissioner must consider the results of related criminal proceedings when determining whether to revoke an individual's driver's license. Specifically, syllabus point three provided as follows:

> In administrative proceedings under *W.Va.Code,* 17C–5A–1 *et seq.*, the commissioner of motor vehicles must consider and give substantial weight to the results of related criminal proceedings involving the same person who is the subject of the administrative proceeding before the commissioner, when evidence of such results is presented in the administrative proceeding.

This Court specified that the consideration requirements announced in *Choma* would be "prospective only." 210 W.Va. at 260 n. 4, 557 S.E.2d at 314 n. 4.

On September 18, 2002, the DMV filed a motion in the lower court to vacate the stays of license revocations for the Appellees. In substantially similar orders entered June 13, 2003, the lower court reversed the DMV license revocations for both Appellees on the grounds that Mr. Adkins had received a dismissal of the criminal charges stemming from his DUI arrest, Mr. Arbaugh had received a verdict of acquittal of the criminal charges stemming from his DUI arrest, and this Court had issued the *Choma* decision requiring consideration of those related criminal proceedings. The lower court also remanded the matters to the commissioner for further proceedings in conformity with the principles announced in *Choma*.

Appealing that decision to this Court, the DMV contends that the lower court erred in applying the requirements of *Choma* to cases pending on appeal when *Choma* was decided and that the open-ended stays of the commissioner's original revocation orders were in violation of statutory stay limitations. The DMV maintains that at the time of the 1995 and 1997 license revocations, *Choma* had not been decided; consequently, the DMV argues that criminal dismissal was not germane to the issue of administrative license revocation when the commissioner first encountered these cases. The DMV further argues that even if *Choma* applies, it holds only that the commissioner must consider the outcome of criminal charges when presented and made a part of the record. The lower court did not review any records of criminal cases or administrative proceedings. Thus, the DMV assigns the following errors: (1) the lower court erred in considering matters outside the scope of the administrative record and placing the burden of prosecuting the appeal on the DMV; and (2) the lower court erred in applying *Choma* retroactively.

### II. Standard of Review

■ In syllabus point one of *Chrystal R.M. v. Charlie A. L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995), this Court explained: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Because the issues of these cases are premised upon a question of retroactivity, we apply the *de novo* standard of review.

### III. Discussion

### A. The Open–Ended Stays

■ The open-ended stays ordered in these consolidated cases were in direct violation of West Virginia Code § 17C–5A–2, which at the time the stays were instituted contained a thirty-day limitation of stays in such matters and currently contains a 150-day limitation of stays.[2] Once these open-

---

**2.** West Virginia Code § 17C–5A–2(p) (1994) (Supp.1994) provided, in pertinent part, as follows:

lows:

ended stay orders were instituted, the Appellees quite understandably made no attempt to bring these matters to a resolution. Thus, the DMV was required to carry the burden of bringing these issues to the attention of the lower court, requesting the court to vacate the stays, and then initiating this appeal when the lower court reversed the revocations and remanded to the commissioner.

During oral argument, the DMV informed this Court that several other pending cases are subject to impermissibly lengthy stays.[3] Such stays cannot be permitted due to their obvious violation of statute, as well as the unreasonable delay in providing final legal resolution to these administrative revocation matters. Thus, we direct that stays of administrative license revocation proceedings in violation of the 150–day statutory limitation of West Virginia Code § 17C–5A–2 must proceed to final resolution as soon

as practicable, and no additional stays in violation of such statute should be ordered.

## B. Application of *Choma v. West Virginia Division of Motor Vehicles*

During the period in which the stays in the cases sub judice were pending, this Court decided *Choma*. In that opinion, this Court spoke directly to the question of prospective application in footnote four, as follows: "Our ruling is prospective only." 210 W.Va. at 260 n. 4, 557 S.E.2d at 314 n. 4. Our evaluation of the present cases is therefore guided by that explicit statement in *Choma*. A question remains, however, regarding whether the *Choma* decision is to be applied, *prospectively*, to cases in which final determinations were yet to be made by November 28, 2001, the date of *Choma's* filing. In other words, a bare statement in *Choma* that the decision is to be applied prospectively, without accompanying explanation, leaves

---

> [P]ending ... appeal, the [circuit] court may grant a stay or supersedeas of the order only upon motion and hearing, and a finding by the court upon the evidence presented, that there is a substantial probability that the appellant shall prevail upon the merits, and the appellant will suffer irreparable harm if the order is not stayed: Provided, That in no event shall the stay or supersedeas of the order exceed thirty days.

West Virginia Code § 17C–5A–2(q) (1996) (Repl. Vol.1998) provided, in pertinent part, as follows:

> [P]ending ... appeal, the [circuit] court may grant a stay or supersedeas of the order only upon motion and hearing, and a finding by the court upon the evidence presented, that there is a substantial probability that the appellant shall prevail upon the merits, and the appellant will suffer irreparable harm if the order is not stayed: Provided, That in no event shall the stay or supersedeas of the order exceed thirty days.

West Virginia Code § 17C–5A–2(q)(2004) currently provides, in pertinent part, as follows:

> The commissioner may not stay enforcement of the order. The court may grant a stay or supersedeas of the order only upon motion and hearing, and a finding by the court upon the evidence presented, that there is a substantial probability that the appellant shall prevail upon the merits, and the appellant will suffer irreparable harm if the order is not stayed: Provided, That in no event shall the stay or supersedeas of the order exceed one hundred fifty days.

3. While the propriety of the circuit court's stay of the administrative revocation proceedings in the cases presently before the Court is technically

moot given this Court's disposition of the other issues in these cases, we nevertheless address this matter because this issue is capable of repetition. As syllabus point one of *Israel by Israel v. West Virginia Secondary Schools Activities Commission*, 182 W.Va. 454, 388 S.E.2d 480 (1989), instructs:

> Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided.

As this Court explained in syllabus point one of *State ex rel. M.C.H. v. Kinder*, 173 W.Va. 387, 317 S.E.2d 150 (1984), "[a] case is not rendered moot even though a party to the litigation has had a change in status such that he no longer has a legally cognizable interest in the litigation or the issues have lost their adversarial vitality, if such issues are capable of repetition and yet will evade review." We consequently conclude that the issue of stays of administrative revocation proceedings in the present cases raises a legal matter of vital public interest which is subject to repetition and requires guidance from this Court for future actions.

open the question of whether the principles announced in the opinion are to be applied (1) only to factual scenarios which have not yet arisen, i.e., acts which have not yet been performed; (2) are also to be applied where no initial administrative determination by the commissioner has been made; or (3) are also to be applied where an initial determination has been made, with an appeal pending to a circuit court. In the cases before this Court, for instance, the initial commissioner's determinations had been made prior to the *Choma* decision, but appeals were pending, and final determinations of the Appellees' cases had not been made prior to the decision in *Choma*.

In examining the Court's intent in its use of the term "prospective" in *Choma*, it is obvious that the *Choma* Court did not intend a *purely* prospective application since the *Choma* Court did indeed apply the newly announced law to the party in question in *Choma*. A purely prospective application is one which does not even apply the newly pronounced law to the parties to the case which resulted in the new law, as clearly explained in *Ketchup v. Howard*, 247 Ga.App. 54, 543 S.E.2d 371 (2000). In *Ketchup*, the Georgia court stated that a "purely prospective application of the principles announced herein" was being adopted and concluded as follows: "Consequently, the prospective application of this ruling will not affect the instant case." 543 S.E.2d at 379. Likewise, in *Prescott v. PNC Bank Corp.*, 332 N.J.Super. 530, 753 A.2d 1222 (2000), the New Jersey court struggled with the disorderliness of the prospective/retroactive issue and observed as follows:

> [W]here the Court believes that a "purely prospective" application of a new rule of law is unfair to the successful litigant, and applies the new rule to the parties, or perhaps the parties and other limited litigants, the choice is called "limited prospectivity," an identical concept to "selective prospectivity."

753 A.2d at 1225 (citations omitted).

The creation of a new rule of law by the Supreme Court requires the Court to ad-dress the perplexing doctrine of retroactivity. Essentially, the Court has four choices. It may:

> "(1) make the new rule of law purely prospective, applying it only to cases whose operative facts arise after the new rule is announced; (2) apply the new rule to future cases and to the parties in the case announcing the new rule, while applying the old rule to all other pending and past litigation; (3) grant the new rule limited retroactivity, applying it to cases in (1) and (2) as well as to pending cases where the parties have not yet exhausted all avenues of direct review; and, finally, (4) give the new rule complete retroactive effect, applying it to all cases, even those where final judgments have been entered and all avenues of direct review exhausted."

*Id.* at 1224 (citations omitted). The New Jersey court in *Prescott* continued by observing that "[a]s generally understood, when the new rule of law is to be applied on a 'purely prospective' basis the court refuses to apply the new rule 'not only to the parties before the court but also to *any* case where the relevant facts predate the decision.'" *Id.* at 1225 (citations omitted). "On the other hand, where the court applies the new 'rule to some but not all cases where the operative events occurred before the court's decision, depending on the equities' the option is called 'selective prospectivity.'" *Id.* at 1225 (citations omitted).

The precedent of this Court, while illustrative, does not provide us with an unequivocal answer to the question of prospectivity posed in these consolidated appeals.[4] In syllabus point five of *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979), this Court outlined the formula for an initial determination of whether a decision should be considered retroactive or prospective, as follows:

> In determining whether to extend full retroactivity, the following factors are to be considered: First, the nature of the

---

4. While we are cognizant of the substantial body of law regarding retroactivity and prospectivity of statutory alterations, we do not address such principles since they are not directly analogous to issues of common law alterations and are limited to areas of statutory change.

substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public policy issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions.

The *Bradley* formula does not give specific guidance to our current situation, in which the decision regarding prospectivity was specified within the *Choma* decision and application of that prospectivity ruling is now at issue.

We acknowledged in *Kincaid v. Mangum,* 189 W.Va. 404, 432 S.E.2d 74 (1993), that "we continue to recognize that there is no one rule which will answer questions regarding the issue of retroactivity in every case...." 189 W. Va. at 416, 432 S.E.2d at 86. Where an opinion does include a specific reference to retroactive or prospective application, such opinion often specifies a time period within which the newly announced rules should be applied. For instance, in *State ex rel. Mitchem v. Kirkpatrick,* 199 W.Va. 501, 485 S.E.2d 445 (1997), this Court concluded that our prior decision in *State ex rel. Riffle v. Ranson,* 195 W.Va. 121, 464 S.E.2d 763 (1995), abrogating the doctrine of forum non conveniens, would "be applied prospectively to cases transferred without an appeal." *Mitchem,* 199 W.Va. at 505, 485 S.E.2d at

449. In explaining its prospectivity ruling, the *Mitchem* Court specified as follows:

> Prospective application means that cases, which were transferred under the doctrine of *forum non-conveniens* after October 27, 1995, the date *Riffle* was filed, should request the circuit court to reconsider the transfer in light of our decision in *Riffle.* Unless extraordinary relief was sought, cases which were transferred under the doctrine of *forum non-conveniens* before October 27, 1995, are not entitled to any relief under *Riffle.*

*Id.* at 505–06, 485 S.E.2d at 449–50. In footnote three of *Mitchem,* the Court further spelled out its precise intent, as follows: "We are unaware of any petitions pending before this Court concerning transfers made under the now abrogated doctrine of *forum non-conveniens.* However, if such a petition is pending, our decision today would not automatically reject a consideration of the petition." *Id.* at 506 n. 3, 485 S.E.2d at 450 n. 3.

Similarly, in *LaRue v. LaRue,* 172 W.Va. 158, 304 S.E.2d 312 (1983), *overruled on other grounds by Butcher v. Butcher,* 178 W.Va. 33, 357 S.E.2d 226 (1987), this Court announced a prospectivity ruling and then provided a clarification of situations in which the new rule would apply. In syllabus point fourteen, this Court stated:

> Equitable distribution based on homemaker services should be applied prospectively, that is, only to those cases filed after the date of this opinion. Since we have applied the homemaker principles to the present case, we will extend these principles to those cases presently on appeal to this Court where an equitable distribution claim for homemaker services has actually been presented in the lower court.

Another example of the prospectivity issue being conformed to specific perceived equitable needs is found in *Belcher v. Goins,* 184 W.Va. 395, 400 S.E.2d 830 (1990). In that case, this Court addressed the *Bradley* factors and ruled that parental consortium claims could be maintained in specified instances where facts had arisen prior to *Belcher's* alteration of a claimant's rights. Specifically, the *Belcher* court explained:

However, to prevent stale claims, a parental consortium claim may not in any event be maintained if the parent was injured more than two years prior to this opinion. Furthermore, to accommodate the usual requirement that a parental consortium claim be joined with the parent's action for physical injuries, a parental consortium action must be brought no later than thirty days after this opinion is filed, where the parent's action was brought prior to this opinion for injuries which were inflicted no more than two years prior to this opinion.

184 W.Va. at 408, 400 S.E.2d at 843.

In *State v. Nichols*, 208 W.Va. 432, 541 S.E.2d 310 (1999), this Court addressed the issue of the evidence necessary to establish a defendant's previous conviction and authorized bifurcation or stipulation in recidivist DUI prosecutions to avoid possible unfair prejudice from telling jurors about previous DUI offenses, overruling a prior case. In footnote twenty-four of *Nichols*, this Court addressed the prospectivity issue applicable in the criminal context and specified as follows:

> While our holding today is applicable to any retrial of Mr. Nichols, our decision has no retroactive application and cannot be used or relied upon by a defendant convicted and sentenced before the filing date of this opinion. "[A] judicial decision in a criminal case is to be given prospective application only if: (a) It established a new principle of law; (b) its retroactive application would retard its operation; and (c) its retroactive application would produce inequitable results." Syl. pt. 5, in part, *State v. Blake*, 197 W.Va. 700, 478 S.E.2d 550 (1996).

208 W.Va. at 445 n. 24, 541 S.E.2d at 323 n. 24. Thus, relying upon *Nichols*, this Court

in *State v. Davisson*, 209 W.Va. 303, 547 S.E.2d 241 (2001), held that the defendant in *Nichols* was "not entitled to retroactive application of *Nichols*" even though the defendant's case was on appeal when *Nichols* was filed. 209 W.Va. at 309, 547 S.E.2d at 247; *see also Dalton v. Doe*, 208 W.Va. 319, 540 S.E.2d 536 (2000) (holding that prior decision, overruling requirement of physical contact in order to recover uninsured motorist benefits and failing to specify prospectivity or retroactivity, applied only prospectively and did not apply to accident occurring prior to decision); *Ashley v. Bellew*, 190 W.Va. 600, 439 S.E.2d 465 (1993) (holding that Kanawha County Correctional Officers Civil Service Commission had erred in relying on case decided after occurrence of events in controversy).[5]

An extensive explanation of the Court's intent was also included in the opinion in *State ex. rel. Eads v. Duncil*, 196 W.Va. 604, 474 S.E.2d 534 (1996), wherein this Court specified:

> We specifically decline to make this decision retroactive as to any revocation made before the order before us.

> As to orders made since that time until our order today is effective, no person incarcerated pursuant to such order shall be subject to release solely by reason of our order today. As to any such cases in which a majority of the Parole Board has both considered the record of the revocation proceeding and concurred with the decision, the member of the Parole Board so considering and concurring in such decision shall forthwith file with the secretary of the Parole Board a written concurrence, and the secretary of the Parole Board shall prepare and certify an order in the nature of a *nunc pro tunc* and furnish and deliver

---

5. An examination of the application of a new rule of criminal law was conducted in *State v. Gangwer*, 168 W.Va. 190, 283 S.E.2d 839 (1981), and this Court stated as follows in syllabus point three:

> In the absence of any countervailing factors, where a new rule of criminal law is made of a nonconstitutional nature, it will be applied retroactively only to those cases in litigation or on appeal where the same legal point has been preserved.

*See also State v. Blake*, 197 W.Va. 700, 711–12, 478 S.E.2d 550, 561–62 (1996) ("A conviction and sentence becomes final for purposes of retroactivity analysis when the availability of direct appeal to this Court is exhausted or the time period for such expires. Concededly, the general rule in this country is to apply new law retroactively to cases that were pending on direct appeal at the time the new rule was adopted").

copies thereof to those entitled to copies of the original order. In cases in which a majority of the Parole Board has not considered the record and concurred in the decision heretofore rendered, the Parole Board shall either proceed to reconsider the record, if available, and issue a new order revoking parole or setting aside the order of revocation or convene a new hearing, the record of which shall be considered and acted upon in the manner consistent with this opinion. A person shall be entitled to release only upon the entry of an order of the Parole Board setting aside its prior revocation order and upon the terms and conditions set forth in such order.

196 W.Va. at 612, 474 S.E.2d at 542.

An examination of the issue of the definition and application of the term "prospective" by other jurisdictions is also beneficial. In *Gallik v. County of Lake,* 335 Ill.App.3d 325, 269 Ill.Dec. 725, 781 N.E.2d 522 (2002), the Illinois court explored the issue of prospectiveness and concluded: "Prospective application means that, on the date of filing, the new rule will affect pending cases and all cases brought after the date of filing." 269 Ill.Dec. 725, 781 N.E.2d at 527; *see also People ex rel. Klaeren v. Village of Lisle,* 352 Ill.App.3d 831, 288 Ill.Dec. 22, 817 N.E.2d 147 (2004).[6]

In *State v. Swainston,* 139 Ariz. 95, 676 P.2d 1153 (App.1984), the Arizona court explained its prospectivity ruling as follows:

While this appeal was pending, the Arizona Supreme Court issued its opinion in *State v. Fettis,* 136 Ariz. 58, 664 P.2d 208 (1983), holding that in the absence of extraordinary circumstances, a sentence may not be imposed on a convicted defendant in absentia. The court further held that its decision should have "prospective application" only. Although the Arizona cases construing the meaning of "prospective application" have produced inconsistent results, the supreme court has recently indicated that *prospective application means that a decision applies to cases on appeal on the date the decision is rendered as* *well as to cases tried after that date.* State v. Nunez, 135 Ariz. 257, 660 P.2d 858 (1983).

676 P.2d at 1154 (emphasis supplied). Likewise, in *State v. LeMaster,* 137 Ariz. 159, 669 P.2d 592 (App.1983), the Arizona court recognized that it "has indicated that prospective application of a decision means that a decision applies to cases tried after the date of filing as well as to cases pending on appeal as of that date." 669 P.2d at 601. The court noted that such "interpretation is consistent with the general rule that when there is a change of law by judicial decision between the time of trial and the time of appeal the appellate court will apply the law prevailing at the time of the appellate disposition." *Id.* (citations omitted); *see also State v. Hanson,* 151 Wash.2d 783, 91 P.3d 888, 892 (2004) (examining prior opinion and holding that it "applies prospectively to include cases not yet final when the … decision was decided").

The United States Supreme Court has also grappled with these issues of prospective application of newly announced principles. *See United States v. Johnson,* 457 U.S. 537, 562, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982) (Broadening *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) and holding that, subject to certain exceptions, "a decision of this Court construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered"). In *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the United Stated Supreme Court held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." 479 U.S. at 328, 107 S.Ct. 708. Subsequent to the *Griffith* decision, the United States Supreme Court decided *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), finding that "[r]etroactivity is properly treated as a threshold question" because once a new constitutional rule

---

6. *Cf., Burgard v. Benedictine Living Communities,* 680 N.W.2d 296 (S.D.2004)(holding that pro-spective application means decision not applied to cases commenced before decision announced).

of criminal procedure is applied to the defendant in the case announcing the rule, "evenhanded justice requires that it be applied retroactively to all who are similarly situated." 489 U.S. at 300, 109 S.Ct. 1060. In *Teague,* the Court distinguished between cases pending on direct review and cases pending on collateral review. *Id.* at 301, 109 S.Ct. 1060.

These rules of application have been explicitly extended to civil cases. In *James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), a majority of Justices agreed that a rule of federal law, having been announced and applied to the parties to the controversy, must be given full retroactive effect by all courts adjudicating federal law. 501 U.S. at 540, 111 S.Ct. 2439. The Court stated that the "equality principle, that similarly situated litigants should be treated the same, carried comparable force in the civil context." *Id.* In *Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), the Court expanded the *Beam* pronouncements as follows:

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule. This rule extends *Griffith's* ban against "selective application of new rules." 479 U.S., at 323[, 107 S.Ct. 708]. Mindful of the "basic norms of constitutional adjudication" that animated our view of retroactivity in the criminal context, *id.,* at 322[, 107 S.Ct. 708], we now prohibit the erection of selective temporal barriers to the application of federal law in non-criminal cases. In both civil and criminal cases, we can scarcely permit "the substantive law [to] shift and spring" according to "the particular equities of [individual parties'] claims" of actual reliance on an old rule and of harm from a retroactive application of the new rule. *Beam, supra,* at 543 [111 S.Ct. 2439] (opinion of Souter, J.). Our approach to retroactivity heeds the admonition that "[t]he Court has no more constitutional authority in civil cases than in criminal cases to disregard current law or to treat similarly situated litigants differently."

509 U.S. at 97, 113 S.Ct. 2510 (citations omitted).

In the cases sub judice, this Court has the opportunity to clarify the prospectivity statement in *Choma.* Based upon the foregoing analysis, we conclude that prospectivity, within the context of the responsibilities imposed upon the commissioner by *Choma,* permits the *Choma* decision to be applied in any judicial determination of administrative license revocation made after the date of *Choma*'s filing, November 28, 2001. This would include a case in which the operative facts occurred prior to November 28, 2001, where (1) the commissioner had not yet rendered a decision; or (2) a direct appeal of that decision is pending. We predicate our holding upon our conclusion that this Court's use of the term "prospective" in *Choma* indicated an intent to apply the requirements enunciated in that opinion to all cases in which administrative license revocation determinations had not been finalized at the time of *Choma*'s issuance, November 28, 2001.

Further, we believe that our resolution of this matter is in accord with the factors identified in *Bradley.* No substantive issue was significantly altered or overruled by *Choma;* an additional consideration for the commissioner was simply added. This additional requirement is of narrow impact and affects few parties. It in no manner demonstrates a dramatic departure from prior case law and does not impinge any party's previously vested rights. Since *Choma* requires the commissioner only to give "consideration" to the results of any criminal prosecution, we believe this resolution of the matter is fair to all parties.

Because the Appellees' cases were pending when this Court issued *Choma, Choma* is applicable to final resolution of their cases. We consequently affirm the decision of the lower court and permit remand to the DMV Commissioner, as ordered by the lower court, for reevaluation of the Appellees' cases and the entry of an order decided in accordance with the requirements of *Choma.* We

further direct, as emphasized above, that stays granted to administrative DUI license revocation proceedings must be properly limited. The commissioner should promptly file and bring on for hearing appropriate motions in every case where an open-ended stay is in effect, and the circuit courts should promptly hear and determine the issues pending in such appeals. Moreover, all stays issued hereafter must respect the legislative limitation of 150 days.

Affirmed.